IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

VANCE EDWARD JOHNSON,

           Plaintiff,              No. CIV S-04-0776 LKK EFB P

      vs.

D.L. RUNNELS, et al.,

          Defendants.         <u>ORDER AND</u>
                                       <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

       Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983.  On May 15, 2009, defendants Pribble, Wilber, Arnold, Bates, Brown, Doyle, Hicks, Houghland, Kelsy, Little, Martinez, Von Rader, Weaver, Bigford, Briddle, Gower, Chapman, and St. Andre moved for summary judgment.  Dckt. No. 146.  The court denied the motion without prejudice to its renewal pending additional discovery.  Dckt. No. 167.  That discovery was completed and defendants have renewed their motion for summary judgment.  Dckt No. 170.

**I. Background and Housecleaning**

       Plaintiff's Third Amended Complaint primarily concerns events that occurred between December 30, 2002 and January 9, 2003.  Plaintiff alleges that during that time, prison officials undertook a "targeted sweep of selected African American" inmates at High Desert State Prison,

where he was then housed.  Third Am. Compl., Dckt. No. 62, at 9.  Plaintiff alleges that defendants violated his 1st, 5th, 8th, and 14th Amendment rights in conducting the sweep and in their treatment of plaintiff while he was confined in administrative segregation afterward.  *Id.* at 35-37.

By order dated September 8, 2006, the court concluded that, for purposes of initial screening under 28 U.S.C. § 1915A, the third amended complaint stated cognizable claims against defendants Briddle, Chapman, Gower, St. Andre, Wilbur, Pribble, Von Rader, Kelsey, Weaver, Houghland, Hicks, Martinez, Bedford, Bates, Little, Doyle, Kelley, Brown, and Arnold for alleged violations of the 8th Amendment.  Dckt. No. 66.  In findings and recommendations dated the same day, and adopted by order dated March 25, 2008, the court concluded that the third amended complaint failed to state cognizable claims against defendants Lewis, Cooper, Jimenez, Bailey, Wagner, Cox, Runnels, Brewer, Martin, Robertson, Gillam, Adam and Peddicord.  Dckt. Nos. 67, 71.  The court further concluded that no due process claim had been stated against any defendant with regard to the alleged confiscation of plaintiff's property during the episode in question.  Dckt. No. 67 at 4.

On April 18, 2007, defendants Chapman, Gower, St. Andre, and Arnold moved to dismiss the claims against them.  Dckt. No. 86.  The court granted the motion with respect to plaintiff's allegations that defendant Chapman allowed other guards to transport plaintiff in a "rickety, safety unequipped paraplegic transvan," that defendant Gower failed to intervene when plaintiff was interrogated while sitting straddled on a chair with his hands behind his back and told to sign paperwork consenting to a strip search, and that defendant Arnold threatened to beat and kill plaintiff.  Dckt. Nos. 108, 110.

The court must now piece together the third amended complaint, screening orders, the order granting dismissal of certain claims, and various other docket entries to determine what claims remain pending.  This task is complicated by the silence of the screening orders regarding certain aspects of the third amended complaint and the parties' failure to clarify the issues and

1  parties implicated therein.

2     **A. Equal Protection Claims**

3          The third amended complaint contains vague and limited equal protection allegations that

4  were not addressed in the court's screening orders, presumably due to their vagueness and the

5  complaint's overwhelming emphasis on the 8th Amendment.  *See* Third. Am. Compl. at 37

6  (stating that defendants violated the 14th Amendment by "imping[ing on plaintiff's] right of

7  property return, repair, or replacement" and through "the *denial of equal protection/treatment of*

8  *the law (racial harassment, and race discrimination* due to deliberate indifference to other races

9  in Ad Seg Unit)." (emphasis added)) & at 9, 10, 12, 13, 14-15, 24, 31, 33, & 34 (alleging 14th

10 Amendment violations against defendants Runnels, Briddle, Chapman, Gower, St. Andre, Lewis,

11 Wilbur, Bailey, Brown, Martin, and Grannis); *see also id.* at 20 (alleging that Correctional

12 Officer Cooper, while wearing "a correctional cowboy hat with confederate cross-sword hat

13 tassels" stated, "We're rounding up all you niggers.").  In opposing the instant motion for

14 summary judgment, plaintiff has now made clear what was vague in his third amended complaint

15 – that he wishes to allege equal protection claims against certain defendants for the events of

16 December 30, 2002 through January 9, 2003.  Pl.'s Renewed Opp'n to Defs.' Mot. for Summ. J.,

17 Dckt. No. 171, at 9-20.  Defendant argues that plaintiff may not "convert" his case into an equal

18 protection case, because the court screened the case as stating only 8th Amendment claims and

19 because all discovery has been limited to those claims.  Defs.' Reply in Supp. of Renewal of

20 Mot. for Summ. J., Dckt. No. 176, at 3.  Plaintiff did, however, include allegations of race

21 discrimination in his complaint, however sparse and vague they were.  The court is loathe to

22 penalize plaintiff for the lack of clarity in the screening orders, which simply did not address

23 those allegations.  However, it is clear from a review of those allegations at this time that the

24 allegations themselves are simply too vague to survive review under 28 U.S.C. § 1915A, which

25 requires dismissal of any claims which fail to state a claim upon which relief may be granted.

26 ////

1    In concluding that dismissal is required here, the court is mindful of the governing

2    standards.  A district court must construe a pro se pleading liberally to determine if it states a

3    claim and, prior to dismissal, tell a plaintiff of deficiencies in his complaint and give plaintiff an

4    opportunity to cure them. *See Lopez v. Smith*, 203 F.3d 1122, 1130-31 (9th Cir. 2000).  While

5    detailed factual allegations are not required, "[t]hreadbare recitals of the elements of a cause of

6    action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 129 S.Ct.

7    1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Plaintiff

8    must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is

9    plausible on its face.'"  *Id.* (quoting *Twombly*, 550 U.S. at 570).

10        A claim has facial plausibility when the plaintiff pleads factual content that allows
          the court to draw the reasonable inference that the defendant is liable for the
11        misconduct alleged. The plausibility standard is not akin to a "probability
          requirement," but it asks for more than a sheer possibility that a defendant has
12        acted unlawfully. Where a complaint pleads facts that are merely consistent with a
          defendant's liability, it stops short of the line between possibility and plausibility
13        of entitlement to relief.

14    *Id.* (citations and quotation marks omitted).  Although legal conclusions can provide the

15    framework of a complaint, they must be supported by factual allegations, and are not entitled to

16    the assumption of truth.  *Id.* at 1950.

17        The Civil Rights Act under which this action was filed provides:

18        Every person who, under color of [state law] . . . subjects, or causes to be
          subjected, any citizen of the United States . . . to the deprivation of any rights,
19        privileges, or immunities secured by the Constitution . . . shall be liable to the
          party injured in an action at law, suit in equity, or other proper proceeding for
20        redress . . . .

21    42 U.S.C. § 1983.  An individual defendant is not liable on a civil rights claim unless the facts

22    establish the defendant's personal involvement in the constitutional deprivation or a causal

23    connection between the defendant's wrongful conduct and the alleged constitutional deprivation.

24    *See Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989); *Johnson v. Duffy*, 588 F.2d 740, 743-44

25    (9th Cir. 1978).

26    ////

1    Plaintiff has not specified which defendants he believes violated the Equal Protection

2  Clause (rather than the Due Process Clause) of the 14th Amendment or what actions he believes

3  constitute such violations.  Accordingly, the equal protection allegations of the complaint must

4  be dismissed, but the court will grant plaintiff leave to amend the complaint to clarify only those

5  equal protection claims.  If plaintiff chooses to file an amended complaint pursuant to this order,

6  that complaint may *not* broaden the scope of the case to allege new facts not connected to the

7  allegedly race-based sweep of African-American inmates between December 30, 2002 and

8  January 9, 2003 or to add new defendants not included in the third amended complaint.  Any

9  amended complaint must adhere to the following requirements:

10    It must be complete in itself without reference to any prior pleading.  E.D. Cal. Local

11  Rule 220; *see Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967).  Once plaintiff files an amended

12  complaint, the prior pleading is superseded.

13    It must show that the federal court has jurisdiction and that plaintiff's action is brought in

14  the right place, that plaintiff is entitled to relief if plaintiff's allegations are true, and must

15  contain a request for particular relief.  Plaintiff must identify as a defendant only persons who

16  personally participated in a substantial way in depriving plaintiff of a federal constitutional right.

17  *Johnson*, 588 F.2d at 743 (a person subjects another to the deprivation of a constitutional right if

18  he does an act, participates in another's act or omits to perform an act he is legally required to do

19  that causes the alleged deprivation).

20    It must contain a caption including the name of the court and the names of all parties.

21  Fed. R. Civ. P. 10(a).

22    Plaintiff may join multiple claims if they are all against a single defendant.  Fed. R. Civ.

23  P. 18(a).  If plaintiff has more than one claim based upon separate transactions or occurrences,

24  the claims must be set forth in separate paragraphs.  Fed. R. Civ. P. 10(b).  Plaintiff may join

25  multiple claims if they are all against a single defendant.  Fed. R. Civ. P. 18(a).  Unrelated claims

26  against different defendants must be pursued in multiple lawsuits.  "The controlling principle

appears in Fed. R. Civ. P. 18(a): 'A party asserting a claim . . . may join, [] as independent or as alternate claims, as many claims . . . as the party has against an opposing party.'  Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2.  Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g)."  *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also* Fed. R. Civ. P. 20(a)(2) (joinder of defendants not permitted unless both commonality and same transaction requirements are satisfied).  Plaintiff may not change the nature of this suit by alleging new, unrelated claims in an amended complaint. *George*, 507 F.3d at 607 (no "buckshot" complaints).

The allegations must be short and plain, simple and direct and describe the relief plaintiff seeks.  Fed. R. Civ. P. 8(a); *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002); *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125 (9th Cir. 2002).  A long, rambling pleading, including many defendants with unexplained, tenuous or implausible connection to the alleged constitutional injury or joining a series of unrelated claims against many defendants very likely will result in delaying the review required by 28 U.S.C. § 1915 and an order dismissing plaintiff's action pursuant to Rule 41 of the Federal Rules of Civil Procedure for violation of these instructions.

Plaintiff must sign the complaint.  Fed. R. Civ. P. 11(a).  By signing an amended complaint, plaintiff certifies he has made reasonable inquiry and has evidentiary support for his allegations and that for violation of this rule the court may impose sanctions sufficient to deter repetition by plaintiff or others.  Fed. R. Civ. P. 11.

A prisoner may bring no section 1983 action until he has exhausted such administrative remedies as are available to him.  42 U.S.C. § 1997e(a).  The requirement is mandatory.  *Booth*

1   *v. Churner*, 532 U.S. 731, 741 (2001).  By signing an amended complaint plaintiff certifies his

2   claims are warranted by existing law, including the law that he exhaust administrative remedies,

3   and that for violation of this rule plaintiff risks dismissal of his entire action

4   **B.  Defendant N. Grannis**

5   In addition, the screening orders did not specifically address the claims alleged against

6   defendant N. Grannis.  *See* Pl.'s Third Am. Compl. at 34 (alleging that defendant Grannis

7   violated plaintiff's rights under the 1st, 5th, 8th, and 14th Amendments by "imped[ing] the

8   exhaustion of appeal by delay of personal property resolution" and by denying an inmate appeal

9   filed by plaintiff, "overlooking facts and admissions of the entire episode.").  The court did

10  dismiss the similar claims of appeal obstruction against defendants Wagner and Cox and claims

11  against all defendants with regard to alleged confiscation of plaintiff's property during the

12  episode in question.  *See id.* at 25-26 (alleging that defendants Wagner and Cox impeded the

13  processing of plaintiff's inmate appeal and thereby interfered with his access to the courts);

14  Dckt. No. 67 at 2-3 & 4; Dckt. No. 71.  The court now expressly finds that plaintiff's third

15  amended complaint fails to state a cognizable claim against defendant Grannis.  Plaintiff alleges

16  that defendant Grannis violated his constitutional rights by delaying the processing of his appeal

17  regarding his personal property and denying his appeal regarding the alleged sweep of African-

18  American inmates.  The court has already concluded that plaintiff has no cognizable claim with

19  regard to his alleged property loss.  Dckt. No. 67 at 4; Dckt. No. 71.  In addition, plaintiff has

20  failed to allege that defendant Grannis deprived him of necessary assistance in preparing his

21  § 1983 case or that such deprivation actually injured his litigation efforts and thus has not stated

22  a claim for denial of access to the courts in violation of the 1st Amendment.  *See Lewis v. Carey*,

23  518 U.S. 343 (1996); Dckt. No. 67 at 2-3.  Nor has plaintiff stated a claim against defendant

24  Grannis for violating his rights to due process, because prisoners lack entitlement under the

25  federal constitution to a grievance procedure and thus cannot claim that an alleged deprivation in

26  the inmate appeal process violated due process.  *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir.

1  1988); Dckt. No. 67 at 4.  Accordingly, plaintiff's claims against defendant Grannis must be

2  dismissed.

3      **C.  Defendant Kelly**

4      The court's review of the docket reveals that defendant R. Kelly has never been served

5  with the complaint.  Plaintiff informed the court of difficulty locating defendant Kelly on May

6  10, 2007 and was given 30 days from May 21, 2007 to submit the necessary documents for

7  service on Kelly.  Dckt. Nos. 89, 91.  Plaintiff failed to do so, and plaintiff's claims against

8  defendant Kelly should therefore be dismissed without leave to amend.  Fed. R. Civ. P. 41(b);

9  Fed. R. Civ. P. 4(m).

10     **D.  The Remaining Claims**

11     Having thus tidied the case, the claims that remain (subject to plaintiff's potential future

12 amendment of the complaint pursuant to this order) are:

13     1.   **Excessive force in violation of the 8th Amendment, against defendants**
            **Briddle, St. Andre, Wilbur, Pribble, Von Rader, and Kelsey, for**
14          **conduct at Building 5, B Yard on December 31, 2002**

15     These allegations concern plaintiff's removal from his cell (known as a "cell extraction")

16 on December 31, 2002.  Plaintiff alleges as follows:  Defendant Pribble "spray[ed] excessive

17 amounts of O.C. spray" into plaintiff's cell "non-stop until empty."  Pl.'s Third Am. Compl. at

18 15.  Defendant Wilbur then punched him, grappled with him, and slammed him against the wall.

19 *Id.* at 14.  Defendant Kelsey punched plaintiff, then kicked and stomped on his side and legs as

20 plaintiff lay on the ground and "trapped [his] right knee with his knee while ratcheting and

21 keying up flex-cuffs on Plaintiff's wrists behind his back."  *Id.* at 17.   Defendant Von Rader

22 punched and choked plaintiff, wrestled him to the ground, pinned his arms behind him, and

23 "kneed Plaintiff in the back of his neck and head until flex-cuffs were applied."  *Id.* at 16.

24 Defendant Briddle "watched in tacit authorization and failed to intervene" during these events

25 and later "refused to allow the keyed-up, ratcheted, hard plastic flex-cuffs to be removed and

26 replaced for metal-locking handcuffs for over 5 hrs."  *Id.* at 9.  Defendant St. Andre "gave direct

say-so and was a bystander" during the incident.  *Id.* at 12.  Von Rader then "escorted Plaintiff hoisted from behind by keyed up, ratcheted flex-cuffs to Program Outpost, sliding and slipping to the ground along the way in undershorts in frigid, icy, snow conditions."  *Id.*

### 2.     Excessive force in violation of the 8th Amendment against defendants Chapman, Gower, Weaver, and Houghland, for conduct at B Yard Building Outpost on December 31, 2002

These allegations concern plaintiff's treatment once removed from his cell while being questioned by correctional staff.  Plaintiff alleges as follows:  Defendant Weaver "punched, then grabbed Plaintiff out of [a] detention cage and slammed his head against the wall and applied pressure, while holding him with an armlock."  *Id.* at 18.  Defendant Houghland also punched and grabbed plaintiff out of a detention cage, pinned plaintiff's arm to the wall, and then "re-applied flex-cuffs ratcheted and keyed up, hoisting from Plaintiff's cuffs behind his back to B Yard Chowhall."  *Id.* at 19.  Defendant Gower "watched on" as defendants Weaver and Houghland punched and grabbed plaintiff and slammed him against the wall.  *Id.* at 11.  Defendant Chapman "was a bystander in tacit authorization and refused to intervene" when defendants Weaver and Houghland were "using interrogative excessive force against" plaintiff.  *Id.* at 10.

### 3.     Unlawful cavity search and medication confiscation in violation of the 8th Amendment against defendant Hicks for conduct at the B Yard clinic on January 4 & 6, 2003

Plaintiff alleges that defendant Hicks conducted an unlawful cavity search on January 4, 2003 "outside the presence of correctional staff and a medical doctor."  *Id.* at 20-21.  Plaintiff further alleges that defendant Hicks confiscated his stomach and eye medication on January 6, 2003 and did not return it.  *Id.* at 21.

////
////
////
////

**4.    Unlawful conditions of confinement in violation of the 8th Amendment against defendants Martinez and Bedford for conduct at Building 5, B Yard between December 31, 2002 and January 4, 2003**

Plaintiff alleges that defendants Martinez and Bedford placed him in a filthy temporary administrative segregation ("Ad. Seg.") cell "with frigid cell conditions" and "dirty and unsanitary blankets, dirty feces stained sheets, [and] ripped up missing insulated mattresses." *Id.* at 21.  Defendants Martinez and Bedford refused to provide to plaintiff "showers, hygiene items, soap, toothpaste, body wash, pencil, paper, request slips, complaint forms, [or] medical slips." *Id.* at 22.  They also served plaintiff cold food.  *Id.*

**5.    Deliberate indifference to medical needs in violation of the 8th Amendment against defendant Bates for conduct at Building 5, B Yard between December 31, 2002 and January 4, 2003**

Plaintiff alleges that defendant Bates, during his medical runs at Building 5, B Yard, was indifferent to plaintiff's medical needs by "refusing to furnish medical request slips, deriding and cursing Plaintiff when making verbal requests, making self-determined diagnosis, [being] indifferent to Plaintiff's need of flu medications when symptoms were manifestly ripe, [and] refusing bandages and sterile gauze for contusions, lacerations, and abrasions." *Id.* at 23.

**6.    Unlawful conditions of confinement in violation of the 8th Amendment against defendants Little and Doyle for conduct at Building 8, D Yard on January 4, 2003**

Plaintiff alleges that defendant Little "escorted Plaintiff to a cold, frigid cell with only a paper jumpsuit and jap flaps, issuing ripped up half mattresses, dirty and unsanitary feces stained sheets." *Id.* at 29.  Defendants Little and Doyle allegedly failed to provide plaintiff with clothing, underwear, socks and blankets because the laundry was not done.  *Id.*  Defendants Little and Doyle also allegedly failed to provide plaintiff with a towel, shower shoes, hygiene items, soap, toothpaste, pencil, paper, request slips, medical slips, complaint forms, a razor, and a phone call, and defendant Little "railed obscenities" at plaintiff for requesting the items.  *Id.* Plaintiff further alleges that defendants Little and Doyle did not let him shower and served him

1   cold food from January 4 to January 9, 2003. *Id.*

2         **7.**   **Excessive force in violation of the 8th Amendment against defendant**
3               **Brown for conduct at Building 5, D Yard on January 9, 2003**

4       Plaintiff alleges that defendant Brown subjected him to excessive force when extracting

5   him from a cell by "key[ing] up handcuffs behind [plaintiff's] back" and slamming plaintiff

6   against the wall, "pressing his night stick against the back of Plaintiff's head and neck,

7   simultaneously hoisting ratcheting handcuffs higher and higher." *Id.* at 31. Defendant Brown

8   then allegedly "manhandled" plaintiff into a detention cage, where he was kept without a seat for

9   over six hours, wearing just undershorts. *Id.*

10        **8.**   **Unlawful conditions of confinement in violation of the 8th**
              **Amendment against defendant Arnold for conduct at Building 8,**
11               **D Yard on January 9, 2003**

12       Plaintiff alleges that defendant Arnold periodically returned to the detention cage in

13   which plaintiff had been placed and beat on it with a night stick, saying "Wake the fuck up!" *Id.*

14   at 32. This conduct continued until "6 hrs. after 3rd watch arrived." *Id.*

15       Defendants seek dismissal of claims (1), (2), (5), (7) and (8) for failure to exhaust as well

16   as summary adjudication of all the above-summarized claims.

17   **II. Analysis**

18      **A. Summary Judgment Standards**

19       Summary judgment is appropriate when it is demonstrated that there exists "no genuine

20   issue as to any material fact and that the movant is entitled to a judgment as a matter of law."

21   Fed. R. Civ. P. 56(c)(2). Summary judgment avoids unnecessary trials in cases in which the

22   parties do not dispute the facts relevant to the determination of the issues in the case, or in which

23   there is insufficient evidence for a jury to determine those facts in favor of the nonmovant.

24   *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

25   242, 247-50 (1986); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th

26   Cir. 1994). At bottom, a summary judgment motion asks "whether the evidence presents a

1  sufficient disagreement to require submission to a jury or whether it is so one-sided that one

2  party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251-52. "When reasonable

3  minds could differ on the material facts at issue, summary judgment is not appropriate." *Nw.*

4  *Motorcycle Ass'n*, 18 F.3d at 1472.

5         Under summary judgment practice, the moving party

6              always bears the initial responsibility of informing the district
            court of the basis for its motion, and identifying those portions of

7              "the pleadings, depositions, answers to interrogatories, and
            admissions on file, together with the affidavits, if any," which it

8              believes demonstrate the absence of a genuine issue of material
            fact.

9

10  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting the prior language of Rule 56(c),

11  which was amended in 2007 to implement purely stylistic changes). If the moving party meets

12  its initial responsibility, the opposing party must "set out specific facts showing that there is a

13  genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *Matsushita Elec. Indus. Co. v. Zenith Radio*

14  *Corp.*, 475 U.S. 574, 586 (1986). The opposing party must demonstrate – through evidence in

15  the form of affidavits and/or admissible discovery material – a factual dispute that is both

16  material (i.e. it affects the outcome of the claim under the governing law) and genuine (i.e., the

17  evidence is such that a reasonable jury could return a verdict for the nonmoving party). Fed. R.

18  Civ. P. 56(e)(2); *Anderson*, 477 U.S. at 248-50; *Matsushita*, 475 U.S. at 586 n.11. Summary

19  judgment should be entered, after adequate time for discovery and upon motion, against a party

20  who fails to make a showing sufficient to establish the existence of an element essential to that

21  party's case, and on which that party will bear the burden of proof at trial. *See Celotex Corp.*,

22  477 U.S. at 322. Thus, "a complete failure of proof concerning an essential element of the

23  nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

24         In resolving a summary judgment motion, the court examines the pleadings, the

25  discovery and disclosure materials on file, and any affidavits filed by the parties. Fed. R. Civ. P.

26  56(c)(2). The evidence of the opposing party is to be believed, and all reasonable inferences that

may be drawn from the facts placed before the court must be drawn in his or her favor. *Anderson*, 477 U.S. at 255*; Matsushita*, 475 U.S. at 587.  Nevertheless, it is the opposing party's obligation to produce a factual predicate from which a favorable inference may be drawn.  *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita*, 475 U.S. at 587 (citation omitted).

On January 18, 2007, the court informed plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  *See Rand v. Rowland*, 154 F.3d 952, 955-60 (9th Cir. 1998) (en banc),  *cert. denied*, 527 U.S. 1035 (1999) (holding that either the district court or the moving party must inform a pro se prisoner of the requirements of Rule 56), and *Klingele v. Eikenberry*, 849 F.2d 409, 411-12 (9th Cir. 1988).

**B.  Analysis of Plaintiff's 8th Amendment Claims**

**1.  Exhaustion**

Pursuant to the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  This requirement is mandatory and unequivocal.  *Booth v. Churner*, 532 U.S. 731, 741 (2001); *McKinney v. Carey*, 311 F.3d 1198, 1200 (9th Cir. 2002) ("Congress could have written a statute making exhaustion a precondition to judgment, but it did not.  The actual statute makes exhaustion a precondition to *suit*." (citation omitted)).  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules."  *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).  An unexhausted claim should be dismissed without prejudice.  *Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003);

1 *McKinney*, 311 F.3d at 1200-01.

2      For those incarcerated in California prisons, exhaustion requires that the prisoner file an

3 inmate appeal and see the appeal through the various levels of review provided for by the

4 relevant state regulations.  Those regulations provide that California prisoners may appeal "any

5 departmental decision, action, condition, or policy which they can demonstrate as having an

6 adverse effect upon their welfare."  Cal. Code Regs. tit. 15, § 3084.1(a).  To initiate the process,

7 an inmate must fill out a simple form, Department of Corrections, Inmate/Parolee Appeal Form,

8 CDC 602 (12/87) ("Form 602"), that is made "readily available to all inmates."  Cal. Code Regs.

9 tit. 15, § 3084.1(c) (2004).  The inmate must fill out two parts of the form: part A, which is

10 labeled "Describe Problem," and part B, which is labeled "Action Requested."  Then, as

11 explained on Form 602 itself, the prisoner "must first informally seek relief through discussion

12 with the appropriate staff member."  The staff member fills in part C of Form 602 under the

13 heading "Staff Response" and then returns the form to the inmate.

14      If the prisoner is dissatisfied with the result of the informal review, or if informal review

15 is waived by the State, the inmate may pursue a three-step review process.  *See* Cal. Code Regs.

16 tit. 15, §§ 3084.5(b)-(d).  Although California labels this three-step process "formal" review

17 (apparently to distinguish this process from the prior step), the three-step process is relatively

18 simple.  At the first level, the prisoner must fill in part D of Form 602, which states: "If you are

19 dissatisfied, explain below."  The inmate then must submit the form, together with a few other

20 documents, to the Appeals Coordinator within 15 working days-three weeks-of the action taken.

21 *Id.*, § 3084.6(c).  The Appeals Coordinator may bypass the first level in certain circumstances.

22 *Id.*, § 3084.5(b).  Within 15 work-days after an inmate submits an appeal, the reviewer must

23 inform the inmate of the outcome by completing part E of Form 602 and returning the form to

24 the inmate.

25      If the prisoner receives an adverse determination at this first level, or if this level is

26 bypassed, the inmate may proceed to the second level of review conducted by the warden.  *Id.*,

1   §§ 3084.5(c), (e)(1).  The inmate does this by filling in part F of Form 602 and submitting the

2   form within fifteen working days of the prior decision.  Within ten working days thereafter, the

3   reviewer provides a decision on a letter that is attached to the form.  If the prisoner's claim is

4   again denied or the prisoner otherwise is dissatisfied with the result, the prisoner must explain

5   the basis for his or her dissatisfaction on part H of the form and mail the form to the Director of

6   the California Department of Corrections and Rehabilitation within 15 working days.  *Id.*, §

7   3084.5(e)(2).

8        Generally, completion of the third level, the Director's Level of Review, exhausts the

9   remedy.  Cal. Code Regs. tit. 15, § 3084.1(a).  All steps must be completed before a civil rights

10  action is filed, unless the plaintiff demonstrates a step is unavailable to him; exhaustion during

11  the pendency of the litigation will not save an action from dismissal.  *McKinney*, 311 F.3d at

12  1200.  The claim must be properly exhausted; therefore, an untimely or otherwise procedurally

13  defective administrative grievance or appeal does not satisfy the exhaustion requirement.

14  *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006).

15       Defendants claim that plaintiff has not exhausted several of his claims, specifically, those

16  claims listed as (1), (2), (5), (7), and (8), above brought against defendants Briddle, Chapman,

17  Gower, St. Andre, Wilbur, Pribble, Von Rader, Kelsey, Weaver, Houghland, Bates, Brown, and

18  Arnold.  Defendants' evidence shows that plaintiff submitted only three inmate appeals while at

19  High Desert State Prison.  Defs.' Separate Stmt. of Undisputed Material Facts (hereinafter

20  "DUF") 25; Defs.' Evidence in Supp. of Mot. for Summ. J. (hereinafter "Defs.' Evidence"), Exs.

21  A (Dangler Decl.) & B (Grannis Decl.).  Two of those appeals are not relevant to the remaining

22  claims in this case.  Defs.' Evidence, Ex. A, Attachs. 1 & 3 (concerning an "out-of-bounds"

23  write-up in 2001 and a confiscated cassette player).  In the remaining appeal, Log No. HDSP B-

24  03-00195 (hereinafter "Appeal 195"), plaintiff alleged that

25       High Desert State Prison wrongfully profiled African American inmates (only) of
         being a[n] immediate threat [to] safety of others and institutional security, by a[n]
26       unreliable gang activity confidential information, which deprived them of

15

privileges, access to court, and property, which resulted in cruel indifference and
treatment, violating health act, human rights, and federal constitutional 4th, 5th,
6th, 8th, and 14th amendment, and due process rights.

*Id.*, Ex. A, Attach. 2.  Specifically, plaintiff alleged that, on December 31, 2002, he was among

group of black inmates who were "taken out of their cells handcuffed behind their back with

mechanical restraints and escorted partially dressed in snow conditions to B yard watch office,

stripped searched (including cavity), interrogated with questions and placed in cages."  *Id.*, Ex.

A, Attach. 2 at 3.  The inmates were then "dressed out in orange and handcuffed behind our

backs with plastic strip tie straps . . . which cut off our blood circulation, cutting into our

forearms and wrists, with shoulders, arms, and back being in excruciating pain."  *Id.*  The

inmates were then placed back in their old cells "with nothing inside but a mattress" and were

given "filthy sheets and blankets off the floor."  *Id.*, Ex. A, Attach. 2 at 4.  The inmates were not

provided clothes, towels, hygiene items, shower slides, appeal forms, or stationary.  *Id.*  "Two

days later we were corralled, handcuffed, and systematically led back to B Yard Clinic . . . ,

stripped and cavity searched . . . , [and again] handcuffed with the same filthy linen and blankets

in betwixt our arms."  *Id.*  The inmates were then transported to a temporary Ad. Seg. unit, where

they were "placed in cages [and] stripped searched (also cavity)."  *Id.*, Ex. A, Attach. 2 at 5.  The

inmates received only a pair of undershorts and a pair of "jap flaps," but no towels, clothing,

shower slides, "fish kit," hygiene items, medication, stationary, or "pen fillers," and were not

allowed access to the law library.  *Id.*  The inmates were "shuffled to unsanitized and filthy

showers" and placed them in double cells.  *Id.*  While housed in Ad. Seg., prison staff

"implemented forced cell evacuations of both inmates to shower" and served "underportioned

food" which was picked up again "moments after serving."  *Id.*  Days after arrival at the

temporary Ad. Seg. unit, staff passed out "filthy, stained, unwashed t-shirts, undershorts, and

towels, with 1/2 sheets and so on."  *Id.*

Plaintiff contends that he exhausted claims (1), (2), (5), (7), and (8), above brought

against defendants Briddle, Chapman, Gower, St. Andre, Wilbur, Pribble, Von Rader, Kelsey,

Weaver, Houghland, Bates, Brown, and Arnold in Appeal 195, which was denied at the third

level on May 22, 2003.  Pl.'s First Opp'n to Defs.' Mot. for Summ. J., Dckt. No. 160, at 4, 6[1];

Defs.' Evidence, Ex. B, Attach. 4.  Having carefully reviewed Appeal 195, the court must agree

with defendants that certain claims brought in this action were not included.  Appeal 195

contains no mention of excessive force used against plaintiff in extracting him from his cell on

December 31, 2002 (the bulk of claim (1)), contains limited information regarding excessive

force in his questioning after his cell extraction on the same day (claim (2)), and contains no

mention of excessive force in extracting him from his cell on January 9, 2003 (claim (7)).  Nor

does it mention defendant Arnold's alleged interruptions of plaintiff's sleep on January 9, 2003.

Lastly, Appeal 195 does not mention refusal by any defendant to provide medical request slips or

treatment for flu symptoms and abrasions from January 4 through January 9, 2003 (claim (5).

Accordingly, dismissal of many of these claims is appropriate.

### a.  Claim (1)

Because plaintiff did not include his allegations of excessive force against defendants

Pribble, Wilbur, Kelsey, Briddle, or St. Andre in any administrative appeal pursuant to Cal. Code

Regs. tit. 15, §§ 3084.1 *et seq.*, claim (1) should be dismissed without prejudice with regard to

these defendants.  *See Morton v. Hall*, 599 F.3d 942, 945-46 (9th Cir. 2010) (finding dismissal

for failure to exhaust appropriate where the prisoner's grievance failed to alert the prison to the

nature of the wrong for which redress was sought).

With respect to defendant Von Rader, plaintiff did not administratively challenge his

alleged use of excessive force on December 31, 2002 either, and those allegations against

defendant Von Rader must also be dismissed.  However, plaintiff did allege in Appeal 195,

---

[1] Plaintiff has submitted two oppositions – one to the summary judgment motion initially filed on May 15, 2009 ("Plaintiff's First Opposition") and one to the renewal of that motion ("Plaintiff's Second Opposition").  Defendants urge the court not to consider Plaintiff's Second Opposition because it was not timely filed.  Defendants do not assert that they will suffer any prejudice from consideration of the Second Opposition, however, and accordingly the court will consider it in the interest of justice.

1  without naming defendant Von Rader specifically, that he was escorted "partially dressed in

2  snow conditions to B Yard watch outpost," which dovetails with his allegation in this case that

3  defendant Von Rader escorted him to the outpost "sliding and slipping along the way in

4  undershorts in frigid, icy, snow conditions."  These allegations were sufficient to apprise the

5  prison of the wrong for which plaintiff sought redress (having been subjected to cold conditions

6  without proper clothing), and plaintiff's claim against defendant Von Rader for escorting him in

7  undershorts through the cold has therefore been exhausted.  *See Griffin v. Arpaio*, 557 F.3d 1117,

8  1121 (9th Cir. 2009) (holding that, to properly exhaust a claim where the prison grievance form

9  instructs the inmate to "describe" the problem but does not elicit further factual specificity, a

10  grievance need not include all relevant information that the prisoner can reasonably obtain, but

11  rather need only alert the prison to the nature of the wrong for which redress is sought).  As

12  defendant Von Rader does not advance any other arguments for dismissal or summary

13  adjudication of this claim, plaintiff's claim that, on December 31, 2002, defendant Von Rader

14  escorted him partially dressed through frigid conditions from his cell to the watch outpost

15  remains to be adjudicated on the merits.

16  **b.  Claim (2)**

17  As noted above, Appeal 195 contains little mention of excessive force used against

18  plaintiff at B Yard Building Outpost after he was removed from his cell on December 31, 2002.

19  There is no allegation therein that plaintiff was punched, grabbed out of the detention cage, or

20  slammed against the wall.  Accordingly, plaintiff's allegations against defendant Weaver and

21  Houghland for such acts must be dismissed due to plaintiff's failure to exhaust.  Similarly,

22  plaintiff's claims that defendant Gower watched on and that defendant Chapman "was a

23  bystander in tacit authorization and refused to intervene" while defendants Weaver and

24  Houghland punched him, grabbed him, and slammed him against the wall must be dismissed for

25  plaintiff's failure to exhaust.

26  ////

1    Plaintiff did allege in Appeal 195, however, that prison staff "handcuffed [him] behind

2 [his] back with plastic tie straps . . . which cut off [his] blood circulation, cutting into [his]

3 forearms and wrists, with shoulders, arms, and back being in excruciating pain," which dovetails

4 with his allegation in this action that defendant Houghland applied "flex-cuffs ratcheted and

5 keyed up, hoisting from Plaintiff's cuffs behind his back to B Yard Chowhall."  These

6 allegations were sufficient to apprise the prison of the wrong for which plaintiff sought redress

7 (staff's use of excessive force in handcuffing him), and plaintiff's claim against defendant

8 Houghland for handcuffing plaintiff too tightly is therefore exhausted.  *See Griffin*, 557 F.3d at

9 1121.  Plaintiff's claim that defendant Chapman "was a bystander in tacit authorization and

10 refused to intervene" while defendant Houghland applied the too-tight plastic cuffs is exhausted

11 for the same reason.  Accordingly, dismissal of plaintiff's claims that defendant Houghland

12 subjected him to excessive force by applying too-tight cuffs on December 31, 2002 at B Yard

13 Building Outpost, and that defendant Chapman tacitly authorized that conduct and refused to

14 intervene is not warranted and these claims remain to be adjudicated on the merits.

15              **c.  Claim (5)**

16    As noted above, Appeal 195 contains no allegation that, while housed his old cell at

17 Building 5, B Yard between December 31, 2002 and January 4, 2003, defendant Bates or any

18 other staff were indifferent to plaintiff's medical needs by, *inter alia*, refusing medical request

19 slips and failing to treat plaintiff's flu symptoms and abrasions.  The sole mention of lack of

20 medical care in the appeal concerns the period of January 4 through January 9, 2003, after

21 plaintiff had been transported to an Ad. Seg. unit at Building 8, D Yard ), mentioning generally

22 that the segregated inmates were not provided medication.  As plaintiff failed to apprise the

23 prison in his inmate appeals of his claim that he was denied medical care between December 31,

24 2002 and January 4, 2003, claim (5) must be dismissed.

25 ////

26 ////

#### d.  Claim (7)

Plaintiff's Appeal 195 contains no allegation of excessive force used against him in extracting him from his cell at Building 5, D Yard on January 9, 2003.  Accordingly, plaintiff's claim (7), which levels such allegations against defendant Brown, must be dismissed.

#### e.  Claim (8)

Appeal 195 also lacks any allegation that his sleep was interfered with by defendant Arnold allegedly yelling at beating on his cell with a night stick at Building 5, D Yard on January 9, 2003.  Accordingly, plaintiff's claim (8), which levels such allegations against defendant Arnold, must be dismissed.

### 2.  Conditions of Confinement Claims

In Claim (4), plaintiff alleges that the conditions of his confinement, imposed by defendants Martinez and Bedford, at Building 5, B Yard between December 31, 2002 and January 4, 2003 violated the 8th Amendment.  The conditions challenged by plaintiff are: (1) "frigid cell conditions"; (2) dirty, unsanitary, and ripped up bedding; (3) no showers; (4) no hygiene items; (5) no paper, pen, or request slips; and (6) cold food.  As a result of these conditions, plaintiff alleges that he "suffered mental anguish, humiliation, embarrassment [and] psychological injury of a permanent nature."  Third Am. Compl. at 22.  Plaintiff seeks compensatory and punitive damages against defendants Martinez and Bedford.  *Id.*

In Claim (6), plaintiff similarly alleges that the conditions of his confinement, imposed by defendants Little and Doyle, at Building 8, D Yard between January 4, 2003 and January 9, 2003 violated the 8th Amendment.  The conditions challenged by plaintiff are: (1) a frigid cell; (2) inadequate clothing and bedding; (3) unsanitary and ripped up bedding; (4) no hygiene items; (5) no paper, pen, or request slips; (6) no phone calls; (7) no shower; (8) no time in the yard to exercise; and (9) cold food.  As a result of these conditions, plaintiff alleges that he "suffered needless embarrassment, humiliation, mental anguish, psychological injury of a permanent nature, shock" and "frustration."  *Id.* at 29 & 30.  Plaintiff seeks compensatory and punitive

1  damages against defendants Little and Doyle.  *Id.*

2       Confinement in prison constitutes "punishment" and is thus subject to scrutiny under the

3  8th Amendment, which "prohibits punishments which . . . involve the unnecessary and wanton

4  infliction of pain . . . or are grossly disproportionate to the severity of the crime."  *Rhodes v.*

5  *Chapman*, 452 U.S. 337, 345-46 (1981) (internal citations and quotation marks omitted).  Thus,

6  it is cruel and unusual punishment to deny medical care or "basic human needs" and may be

7  cruel and unusual to deny "the minimal civilized measure of life's necessities."  *Id.* at 347.

8  Prison officials "must provide humane conditions of confinement," including "adequate food,

9  clothing, shelter, and medical care."  *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994).  To

10  succeed on an 8th Amendment conditions-of-confinement claim, a prisoner must show that (1)

11  the defendant prison official's conduct deprived him or her of the minimal civilized measure of

12  life's necessities (the objective component) and (2) that the defendant acted with deliberate

13  indifference to the prisoner's health or safety (the subjective component).  *Id.* at 834.  To show

14  deliberate indifference, the prisoner must establish that the defendant knew of and disregarded an

15  excessive risk to inmate health or safety; "the official must both be aware of facts from which the

16  inference could be drawn that a substantial risk of serious harm exists, and he must also draw the

17  inference."  *Id.* at 837.  A prison official may thus be free from liability if he or she did not know

18  of the risk or took reasonable action in response to the risk.  *Id.* at 844.

19       Plaintiff's claims against defendants Bedford, Martinez, Doyle, and Little for depriving

20  him of hot food, paper, pen, request slips, complaint forms, phone calls, and yard exercise

21  between December 31, 2002 and January 9, 2003 fail as a matter of law, as these acts or

22  omissions, even if true, did not amount to deprivations of the minimal civilized measure of life's

23  necessities and thus do not satisfy the objective component of an 8th Amendment violation.

24  Plaintiff does not allege that the food he was served was inedible or otherwise inadequate to

25  maintain health, and in fact he testified at his deposition that the food was the same food served

26  to the general population and was edible.  Def.'s Evidence, Ex. I, Attach. 15 at 132:18-133:5,

169:8-14.  Because prison food "need not be tasty or aesthetically pleasing," but only adequate to maintain health, cold food is not a deprivation sufficient to constitute cruel and unusual punishment under the 8th Amendment.  *LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993). Deprivation of paper, pen, request slips, complaint forms, and phone calls for a period of 9-10 days similarly does not rise to the level of extreme deprivation prohibited by the 8th Amendment, as these deprivations do not depart dramatically from accepted standards for conditions of confinement, create inhumane conditions, inflict pain or injury, create a risk to health or safety, or otherwise deprive inmates of basic necessities.  *See Overton v. Bazzetta*, 539 U.S. 126, 136-37 (2003) (holding that a two-year ban on visitation for inmates with two substance-abuse violations did not violate the 8th Amendment).  Similarly, the deprivation of yard exercise for 9-10 days without any allegation or evidence that the deprivation caused plaintiff medical harm does not amount to cruel and unusual punishment.  *May v. Baldwin*, 109 F.3d 557, 565 (9th Cir. 1997) (holding that a 21-day deprivation of outdoor exercise was not cruel and unusual because "a temporary denial of outdoor exercise with no medical effects is not a substantial deprivation.").

Plaintiff's allegations that he was deprived of a sufficiently warm cell, sufficient clothing, sanitary bedding, hygiene items, showers, and medical slips cannot be disposed of as a matter of law, however, as such deprivations may be extreme enough to violate the 8th Amendment.  *See Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (stating that an 8th Amendment violation may be established by conduct that deprives an inmate of basic human needs, including the need for warmth); *Pollard v. GEO Group, Inc.*, 607 F.3d 583, 598-99 (9th Cir. 2010) (noting that an inmate's exposure to human waste may violate the 8th Amendment and citing *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (concluding that exposure to human waste, even for 36 hours, would constitute a sufficiently serious deprivation to violate Eighth Amendment) and *Vinning-El v. Long*, 482 F.3d 923, 924 (7th Cir. 2007)); *Johnson v. Lewis*, 217 F.3d 726, 735 (9th Cir. 2000) ("The Eighth Amendment does not tolerate prison officials' deliberate

1  indifference, in the absence of exigent circumstances, to substantial deprivations of adequate

2  shelter, food, drinking water, and sanitation."); *Conn v. City of Reno*, 591 F.3d 1081, 1094 (9th

3  Cir. 2010) (stating that a prison official's deliberate indifference to an inmate's serious medical

4  need violates the 8th Amendment); *Anderson v. County of Kern*, 45 F.3d 1310, 1314 (9th Cir.

5  1995) ("[S]ubjection of a prisoner to lack of sanitation that is severe or prolonged can constitute

6  an infliction of pain within the meaning of the Eighth Amendment.").  While the alleged

7  deprivation of hygiene items and showers may not alone have been serious enough to violate the

8  8th Amendment due to the short time period involved, it is conceivable that those deprivations,

9  when combined with the alleged provision of unsanitary bedding, denial of medical care and

10  sufficient clothing, and cold cell conditions created a situation in which plaintiff was forced to

11  choose between freezing or exposing himself to unsanitary conditions without the ability to clean

12  himself.  *See Wilson,* 501 U.S. at 304 (stating that the denial of adequate bedding may, in

13  combination with cold cell conditions, violate the 8th Amendment).  Thus the court must look to

14  the evidence submitted by each party on the issues of adequate sanitation, warmth, and medical

15  care.

16       Defendants Bigford and Martinez argue that the undisputed facts show that plaintiff was

17  not denied adequate bedding, clothes, or showers.  Defendants point to plaintiff's deposition, in

18  which he testified that he was clothed in a jumpsuit and flip-flops, that he was issued bedding

19  within a half-hour of defendants' calling to see if bedding was available, that he received a

20  shower within one or two days, and that the bedding smelled like ammonia (and thus, defendants

21  argue, was clean).  Plaintiff's deposition testimony, however, is mostly unhelpful to defendants.

22  Plaintiff testified that the conditions were snowy when he and other inmates were placed back in

23  their old cells, which had been stripped of all amenities.  Defs.' Evidence, Ex. I, Attach. 15 at

24  122:1-24.  The conditions were icy and frigid, with the air conditioner blasting.  *Id.* at 133:10-12.

25  When the inmates received bedding, it was unclean, taken from a bin of dirty laundry.  *Id.* at

26  124:2-19.  The bedding was stained with feces and vomit and was "ammonia scented," that is, it

exuded a "pissy" smell.  *Id.* at 124:20-125:3.  Despite the cold, the inmates were reluctant to use

the filthy bedding.  *Id.* at 133:10-14.  The mattress provided by defendants was ripped up

following a search for contraband and stained with "piss, feces, vomit, sweat."  *Id.* at 125:22-

126:18.  Plaintiff asked defendants for hygiene items, soap, and a shower.  *Id.* at 126:19-24.

Defendants allowed plaintiff to shower one or two days after being placed back in his old cell,

but was not provided with soap.  *Id.* at 128:10-24.  Plaintiff asked defendants for bandages for

his "cuts, abrasions, and contusions and lacerations," but received none.  *Id.* at 131:10-24.

Defendants told plaintiff to put his medical requests on a piece of paper to be provided to

medical staff, but plaintiff received no response.  *Id.* at 131:15-17.

     In addition to the sworn allegations in his verified complaint[2] and his deposition

testimony, plaintiff has submitted three declarations from other inmates subjected to the sweep in

opposition to defendants' motion for summary judgment.[3]  Kerry D. Thrower declares that he

was wearing only underwear and boots at the time of the sweep and that no supplies were

provided by officials in the B Yard temporary Ad. Seg.  Pl.'s Second Opp'n to Defs.' Mot. for

---

    [2] A verified complaint based on personal knowledge setting forth specific facts admissible in evidence is treated as an affidavit.  *Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995); *McElyea v. Babbit*, 833 F.2d 196, 198 (9th Cir. 1987).

    [3] Plaintiff also seeks judicial notice of several Sacramento Bee articles concerned with the conditions at "behavior units" in California prisons.  Dckt. No. 175.  These articles are not proper subjects of judicial notice, however, as they do not contain facts "generally known within the territorial jurisdiction of the trial court or capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Moreover, because the facts alleged by plaintiff did not occur at a behavior unit, the articles are of limited relevance to the instant action.  The court has therefore not considered the articles in analyzing the instant motion for summary judgment.

    Plaintiff also seeks additional time for discovery under Federal Rule of Civil Procedure 56(f).  Under Rule 56(f), the party seeking a continuance must "identify by affidavit the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment."  *Tatum v. City and County of San Francisco*, 441 F.3d 1090, 1100 (9th Cir. 2006).  Plaintiff has not explained what facts he seeks to obtain which are essential to his opposition to the instant motion, and thus a continuance under Rule 56(f) is not warranted.  Rather, plaintiff appears to take issue with prior discovery rulings of the court.  The court declines to revisit its past discovery rulings here.

1  Summ. J., Ex. 49 at 2, 3.  Kenneth Wash declares that he was wearing underwear and shower

2  slides at the time of the sweep and that he spent two or three days with only one sheet and

3  blanket.  *Id.*, Ex. 50 at 2, 3.  Christopher Oatey declares that officials ordered him to strip to his

4  underwear and flip flops and removed all property from his cell before returning him to it, where

5  he was "violently cold and shaking."  *Id.*, Ex. 51 at 3.  He received only one sheet and blanket.

6  *Id.* at 4.  Officials provided no soap, toilet paper, toothbrush, comb or clothing.  *Id.*  Defendants'

7  evidence thus fails to show the absence of a triable issue of material fact, and plaintiff's evidence

8  attests to the presence of such an issue, as to whether defendants Bigford and Martinez were

9  deliberately indifferent to unconstitutional conditions of confinement by denying plaintiff

10  sanitary bedding, clothes, hygiene items, and hygienic showers.

11       However, plaintiff's evidence fails to raise a triable issue of material fact as to whether

12  defendants Bigford and Martinez were deliberately indifferent to plaintiff's serious medical

13  needs.  To succeed on an 8th Amendment claim for failure to provide medical treatment, a

14  plaintiff must show a serious medical need (i.e., a need such that a failure to treat the plaintiff's

15  condition could result in further significant injury or the unnecessary and wanton infliction of

16  pain) and that the defendant was deliberately indifferent in response to the need.  *Conn*, 591 F.3d

17  at 1094-95.  Plaintiff testified in his deposition that he requested treatment only for "cuts,

18  abrasions, and contusions and lacerations" while in temporary Ad. Seg.  Defs.' Evidence, Ex. I,

19  Attach. 15 at 131:10-24.  Plaintiff submits no evidence that these injuries are of the type such

20  that a failure to treat could result in further significant injury or the unnecessary and wanton

21  infliction of pain.  In addition, plaintiff fails to rebut the evidence submitted by defendants

22  Bigford and Martinez that they provided plaintiff with paper to communicate his requests to

23  medical staff.  Thus, plaintiff has failed to raise a triable issue that defendants Bigford and

24  Martinez were deliberately indifferent to his medical requests.

25       Defendants Bigford and Martinez additionally argue that summary judgment in their

26  favor is appropriate on plaintiff's claim for compensatory damages because it is undisputed that

1  plaintiff did not suffer more than *de minimus* physical injury as a result of their alleged

2  misconduct.  Under 42 U.S.C. § 1997e(e), "no federal civil action may be brought by a prisoner

3  confined in jail, prison, or other correctional facility, for mental or emotional injury suffered

4  while in custody without a prior showing of physical injury."  This requirement has been

5  interpreted to mean that a prisoner prosecuting a § 1983 case may not obtain compensatory

6  damages (but may obtain nominal and/or punitive damages) absent a showing of more than *de*

7  *minimus* physical injury.  *Oliver v. Carey*, 289 F.3d 623, 627, 629-30 (9th Cir. 2002).  Here,

8  plaintiff's complaint alleged only psychological injuries resulting from the alleged misconduct of

9  defendants Bigford and Martinez.  Plaintiff now claims in addition that he contracted flu

10 symptoms as a result.  Defs.' Evidence, Ex. I, Attach. 15 at 133:6-134:14 (describing symptoms

11 as "cough, sneeze, tepid fingertips, toes cold"); Pl.'s First Opp'n to Defs.' Mot. for Summ. J.,

12 Ex. E at 155:20-156:1 (describing symptoms as "[s]evere headaches, migraines, sniffles,

13 sneezing, body aches" and "raspy throat"); *but see id.*, Ex. C, Attachs. 7 & 8 (reports of medical

14 staff indicating that plaintiff exhibited or stated no injuries when observed by medical staff on

15 December 31, 2002 and January 2, 2003).  While not in any way minimizing whatever emotional

16 upset one might experience under the conditions alleged here, the focus of the legal question

17 presented here is the extent of physical injury.  The court agrees with defendants that these

18 symptoms are *de minimus* and thus summary judgment is appropriate on plaintiff's claim for

19 compensatory damages against defendants Bigford and Martinez, which are all premised on

20 emotional or *de minimus* physical injuries.  *See Canell v. Multnomah County*, 141 F. Supp.2d

21 1046, 1053-54 (D. Or. 2001) (allegations of foot fungus, nose sores, constipation and a winter

22 cold amounted only to *de minimus* injuries precluding relief for compensatory damages under

23 § 1997e(e)).

24        Defendants Little and Doyle similarly argue that the undisputed facts show that they did

25 not deprive plaintiff of warmth, adequate clothing, sanitary bedding, hygiene items, or medical

26 assistance.  Defendants Little and Doyle submit more than plaintiff's deposition transcript as

evidence in support of their argument, in the form of a log with entries dating from January 2 through January 10, 2010.  Defs.' Evidence, Ex. F (Doyle Decl.), Attach. 11; *id.*, Ex. G (Little Decl.), Attach. 12.  The log indicates that, on January 3, 2010, plaintiff was provided with "all ad seg clothing & linen," a "fish kit," and a jumpsuit.  Doyle Decl., Attach. 11.  According to defendants Doyle and Little, the standard issue of Ad. Seg. clothing and linen includes "three t-shirts, three boxers, three pairs of socks, shoes, a jumpsuit, two blankets, two sheets, and two towels."  Doyle Decl. at ¶ 9; Little Decl. at ¶ 8.  All clothing and linen that Doyle provided to plaintiff was clean and sanitary.  Doyle Decl. at ¶ 10.  A "fish kit" includes "one roll of toilet paper, one bar of soap, one toothbrush, toothpowder, a comb, transport shoes, one pen filler to write with, one plastic spoon, one paper cup, two 602 inmate appeal forms, medical request and Americans with Disabilities Act forms, inmate request for interview form, trust withdrawal form, U-Save-'Em envelope (intra-prison mail envelope, five envelopes, and five blank sheets of paper."  Doyle Decl. at ¶ 11; Little Decl. at ¶ 9.  The log further indicates that plaintiff received showers on January 3, 6, 8, and 10.  Doyle Decl., Attachment 11.

In his deposition, however, plaintiff testified that he had only a paper jumpsuit and did not receive clothes until he had been in Ad. Seg. at D Yard for five days, and that the clothes he did receive were dirty and "smelled like pee."  Defs.' Evidence, Ex. I, Attach. 15 at 164:2-17; Pl.'s First Opp'n to Defs.' Mot. for Summ. J., Ex. E at 159:12-17.  While he received showers, the showers were filthy.  Defs.' Evidence, Ex. I, Attach. 15 at 164:22-25.  Defendants Little and Doyle refused to provide plaintiff with medical request slips and refused to call medical staff.  *Id.* at 168:12-19.

While the log provides evidence in support of defendants' assertion that they provided plaintiff with adequate linen and hygiene items, it does not show that fact conclusively.  It is conceivable that the entries were completed by rote or otherwise did not accurately depict what was being provided to plaintiff, who testified under oath that he was not provided with clean clothes and submitted sworn allegations that he was not provided with adequate bedding,

1    clothing, warmth, and sanitation.  All that is established at this point is that there exits a genuine

2    dispute over the conditions describe in plaintiff's testimony that must be resolved at trial.

3           Accordingly, the court concludes that plaintiff has raised a triable issue of fact on

4    whether defendants Little and Doyle violated his 8th Amendment rights by failing to provide

5    these necessities.  Plaintiff has not raised a triable issue of fact regarding whether defendants

6    Little and Doyle denied him medical treatment, however, as he has failed to submit evidence that

7    defendants were deliberately indifferent to a serious medical need he suffered from while housed

8    in D Yard between January 4 and January 9, 2010.  Relatedly, as plaintiff has not alleged or

9    come forward with evidence showing that he suffered a more than *de minimus* physical injury as

10   a result of defendants Doyle's and Little's alleged misconduct, summary judgment is appropriate

11   on his claim for compensatory damages against these defendants, as that claim is premised solely

12   on emotional injuries.  Defs.' Evidence, Ex. I at 170:4-14 (plaintiff testifying that defendants

13   Little and Doyle did not cause him any physical injury).

14          Lastly, defendants Bigford, Martinez, Little, and Doyle contend that they are entitled to

15   qualified immunity from plaintiff's claims because plaintiff cannot show that their conduct

16   violated his constitutional rights because they provided plaintiff with all of life's basic

17   necessities.  *See Saucier v. Katz*, 533 U.S. 194, 201 (2001) (holding that a defendant official is

18   entitled to qualified immunity if, taking the facts in the light most favorable to the plaintiff, the

19   facts show no constitutional violation, or, if the facts show a constitutional violation, the right

20   asserted was not clearly established at the time of the official's contested conduct).  The court's

21   determination that there exists a genuine dispute of material facts regarding whether defendants'

22   conduct violated plaintiff's 8th Amendment rights forecloses defendants' claim that the facts,

23   taken in the light most favorable to plaintiff, do not show a constitutional violation.  Summary

24   judgment in defendants' favor on grounds of qualified immunity is therefore not warranted.

25          Accordingly summary judgment must be denied on plaintiff's claims that defendants

26   Bigford and Martinez violated his 8th Amendment rights by denying him adequate bedding,

warmth, clothing, hygiene items, and showers between December 31, 2002 and January 4, 2003

in B Yard and plaintiff's claims that defendants Little and Doyle violated his 8th Amendment

rights by denying him adequate bedding, warmth, clothing, hygiene items, and showers between

January 4 and January 10, 2003 in D Yard.  Summary judgment is appropriate, however, on

plaintiff's claims that defendants Bigford, Martinez, Little, and Doyle violated his 8th

Amendment rights by denying him warm food, paper, pen, request slips, complaint forms,

request slips, phone calls, yard exercise, and medical care.  Summary judgment is further

appropriate on plaintiff's claims for compensatory damages against defendants Bigford,

Martinez, Little, and Doyle for alleged emotional injuries.  Plaintiff may continue to seek

nominal and/or punitive damages against those defendants for his remaining claims.[4]  *See Oliver*,

289 F.3d at 629-30 (holding that § 1997e(e) does not bar actionable claims for compensatory,

punitive, and nominal based on constitutional violations rather than on emotional injury); *Searles*

*v. Van Bebber*, 251 F.3d 869, 879-81 (10th Cir. 2001) (holding that § 1997e(e) does not bar a

claim for nominal and punitive damages for alleged constitutional violations even absent

physical injury); *Allah v. Al-Hafeez*, 226 F.3d 247, 251-52 (3d Cir. 2000) (same).

### 3. **Strip Search Claim**

In Claim (3), plaintiff alleges that defendant Hicks violated his 8th Amendment rights by

subjecting him to a body cavity search on January 4, 2003 outside the presence of correctional

staff and a medical doctor.  Defendant Hicks disputes that the search in question was a "cavity"

search, as no physical intrusion of plaintiff's body cavities took place.  Plaintiff's deposition

testimony alleges that plaintiff was stripped, made to squat and cough, and that defendant Hicks

felt his abdomen and required him to spread his buttocks so that she could visually inspect his

rectum.  Defs.' Evidence, Ex. I, Attach. 15 at 138:10-140:4.  Plaintiff's allegations, even if true,

---

[4] Although plaintiff does not expressly seek nominal damages, it is consistent with a claim for nominal damages, and thus the court construes the complaint to make such a claim. *Oliver*, 289 F.3d at 630.

1  do not suffice as a matter of law to establish a violation of the 8th Amendment.  *See Johnson v.*

2  *Phelan*, 69 F.3d 144, 150-51 (7th Cir. 1995) (holding that cross-sex monitoring of inmates was

3  not inhumane and thus did not satisfy the objective component of an 8th Amendment claim).

4  Accordingly, summary judgment must be granted in favor of defendant Hicks on plaintiff's

5  claim that the visual body cavity search violated his 8th Amendment rights.

6  **4. <u>Medication Confiscation Claim</u>**

7  Plaintiff further claims in claim (3) that defendant Hicks violated his rights under the 8th

8  Amendment when she confiscated his acid reflux medication and eye drops and did not return

9  them.  Plaintiff essentially claims that he was deprived of treatment for his heartburn and dry eye

10  conditions from the time of the confiscation (January 6, 2010) until he received replacement

11  medications within a month of his return to his cell in B Yard on January 10, 2003.  *See* Defs.'

12  Evidence, Ex. I, Attach. 15 at 144:8-146:13, 153:4-23.  Defendants argue that these facts do not

13  satisfy the objective or subjective components of an 8th Amendment claim.

14  Plaintiff stated at deposition that he did not suffer any physical injury as the result of

15  defendant Hicks's conduct, although he appeared to be referring solely to the body search.  *Id.* at

16  146:14-22.  In his verified complaint, plaintiff alleges that he suffered "needless sinus pain and

17  chronic migraine headaches" due to defendant Hicks's actions.  Third Am. Compl. at 21.  These

18  sworn allegations may be sufficient to establish the objective component of an 8th Amendment

19  claim, but plaintiff has not come forward with evidence showing the subjective component.  In

20  fact, plaintiff has submitted a document showing that defendant Hicks confiscated the

21  medication because it lacked proper labeling rather than to expose him to a risk of harm.  Pl.'s

22  First Opp'n to Defs.' Mot. for Summ. J., Ex. 8.  Plaintiff does not allege or proffer evidence that

23  he requested return of the medication but was ignored by defendant Hicks or otherwise show that

24  defendant Hicks acted unreasonably or delayed replacement of plaintiff's medications.

25  ////

26  ////

Accordingly, summary judgment is appropriate in favor of defendant Hicks on plaintiff's claim that she violated his rights under the 8th Amendment by confiscating his acid reflux and eye medication.

**III.  Order and Recommendations**

In accordance with the foregoing analysis, it is hereby ORDERED that:

1.  The equal protection/race discrimination allegations in the third amended complaint are dismissed pursuant to 28 U.S.C. § 1915A.  Plaintiff shall have 30 days from the service of an order by the district judge adopting or declining to adopt the findings and recommendations set forth herein to file an amended complaint to state cognizable equal protection claims.  Plaintiff is not obligated to amend his complaint.  If plaintiff elects to amend his complaint, the amended complaint should comply with the requirements set forth above and further omit those claims summarily adjudicated in defendants' favor or dismissed for failure to exhaust as set forth in the order by the district judge either adopting or declining to adopt the following findings and recommendations.

2.  Plaintiff's claims against defendant N. Grannis are dismissed with leave to amend pursuant to 28 U.S.C. § 1915A.  Within 30 days of service of an order by the district judge adopting or declining to adopt the findings and recommendations set forth herein, plaintiff may amend his complaint to attempt to state cognizable claims against defendant N. Grannis. Plaintiff is not obligated to amend his complaint.

Further, it is hereby RECOMMENDED that:

1.  Plaintiff's claims against defendant R. Kelly be dismissed without leave to amend for plaintiff's failure to submit the necessary service documents as ordered by the court on May 21, 2007.

2.  Plaintiff's claims against defendants Pribble, Wilbur, Kelsey, Briddle, St. Andre, Weaver, Gower, Bates, Brown, and Arnold be dismissed without prejudice for failure to exhaust administrative remedies.

3.  Plaintiff's claim alleging that defendant Von Rader subjected him to excessive force on December 31, 2002 be dismissed without prejudice for failure to exhaust administrative remedies.

4.  Plaintiff's claim alleging that defendant Houghland punched, grabbed, and slammed plaintiff against a wall on December 31, 2002 be dismissed without prejudice for failure to exhaust administrative remedies.

5.  Plaintiff's claim alleging that defendant Chapman "was a bystander in tacit authorization and refused to intervene" as other defendants punched, grabbed, and slammed plaintiff into a wall on December 31, 2002 be dismissed without prejudice for failure to exhaust administrative remedies.

6.  Summary adjudication of plaintiff's claims that defendants Bigford, Martinez, Little, and Doyle deprived plaintiff of warm food, yard exercise, phone calls, paper, pen, request slips, complaint forms, and medical care between December 31, 2002 and January 9, 2003 be granted in favor of defendants.

7.  Summary adjudication of plaintiff's claims for compensatory damages against defendants Bigford, Martinez, Little, and Doyle be granted in favor of defendants.

8.  Defendants' requests for summary adjudication and/or dismissal of plaintiff's remaining claims be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

////

////

////

within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated:   August 30, 2010.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE