1

2

3

4

5

6

7    IN THE UNITED STATES DISTRICT COURT

8    FOR THE EASTERN DISTRICT OF CALIFORNIA

9    VANCE EDWARD JOHNSON,

10          Plaintiff,                    No. 2:04-cv-776-LKK-EFB P

11          vs.

12   D.L. RUNNELS, et al.,

13          Defendants.          <u>FINDINGS AND RECOMMENDATIONS</u>

14   _____/

15          Plaintiff is a state prisoner proceeding without counsel in an action brought under 42

16   U.S.C. § 1983.  Currently pending before the court is the March 27, 2013 motion for summary

17   judgment brought by all remaining defendants.  ECF No. 237.  For the reasons that follow, the

18   motion must be granted in part and denied in part.

19   **I.      Background**

20          Plaintiff's Third Amended Complaint primarily concerns events that occurred between

21   December 30, 2002 and January 9, 2003.  Plaintiff alleges that during that time, prison officials

22   undertook a "targeted sweep of selected African American" inmates at High Desert State Prison,

23   where he was then housed.  ECF No. 62 (Third Am. Compl.) at 9.  Plaintiff alleges that

24   defendants violated his First, Fifth, Eighth, and Fourteenth Amendment rights in conducting the

25   sweep and in their treatment of plaintiff while he was confined in administrative segregation

26   afterward.  *Id.* at 35-37.

1    By order dated September 8, 2006, the court concluded that, for purposes of initial

2  screening under 28 U.S.C. § 1915A, the third amended complaint stated cognizable claims

3  against defendants Briddle, Chapman, Gower, St. Andre, Wilbur, Pribble, Von Rader, Kelsey,

4  Weaver, Houghland, Hicks, Martinez, Bedford, Bates, Little, Doyle, Kelley, Brown, and Arnold

5  for alleged violations of the 8th Amendment.  ECF No. 66.  In findings and recommendations

6  dated the same day, and adopted by order dated March 25, 2008, the court concluded that the

7  third amended complaint failed to state cognizable claims against defendants Lewis, Cooper,

8  Jimenez, Bailey, Wagner, Cox, Runnels, Brewer, Martin, Robertson, Gillam, Adam and

9  Peddicord.  ECF Nos. 67, 71.  The court further concluded that no due process claim had been

10  stated against any defendant with regard to the alleged confiscation of plaintiff's property during

11  the episode in question.  ECF No. 67 at 4.

12    On April 18, 2007, defendants Chapman, Gower, St. Andre, and Arnold filed a motion to

13  dismiss the claims against them.  ECF No. 86.  The court granted the motion with respect to

14  plaintiff's allegations that defendant Chapman allowed other guards to transport plaintiff in a

15  "rickety, safety unequipped paraplegic transvan," that defendant Gower failed to intervene when

16  plaintiff was interrogated while sitting straddled on a chair with his hands behind his back and

17  told to sign paperwork consenting to a strip search, and that defendant Arnold threatened to beat

18  and kill plaintiff.  ECF Nos. 108, 110.

19    By order dated September 30, 2010, the court dismissed plaintiff's claims against

20  defendant Grannis as not cognizable.  ECF No. 177 at 7-8, 31.  In the same order, the court

21  dismissed plaintiff's equal protection allegations and provided plaintiff with an opportunity to

22  amend his complaint to state a cognizable equal protection claim.  *Id.* at 3-7, 31.  Plaintiff did not

23  do so, and the equal protection claim accordingly remains dismissed.  On October 21, 2010, the

24  court dismissed plaintiff's claims against defendant Kelly for failure to submit the necessary

25  service documents.  ECF No. 190 at 3.

26    Plaintiff's remaining claims are summarized below.

1. **Excessive force in violation of the Eighth Amendment, against defendants Briddle, St. Andre, Wilbur, Pribble, Von Rader, and Kelsey, for conduct at Building 5, B Yard on December 31, 2002**.

These allegations concern plaintiff's removal from his cell (known as a "cell extraction") on December 31, 2002. Plaintiff alleges as follows: Defendant Pribble "spray[ed] excessive amounts of O.C. spray" into plaintiff's cell "non-stop until empty." Pl.'s Third Am. Compl. at 15. Defendant Wilbur then punched plaintiff, grappled with him, and slammed him against the wall. *Id.* at 14. Defendant Kelsey punched plaintiff, then kicked and stomped on his side and legs as plaintiff lay on the ground and "trapped [his] right knee with his knee while ratcheting and keying up flex-cuffs on Plaintiff's wrists behind his back." *Id.* at 17. Defendant Von Rader punched and choked plaintiff, wrestled him to the ground, pinned his arms behind him, and "kneed Plaintiff in the back of his neck and head until flex-cuffs were applied." *Id.* at 16. Defendant Briddle "watched in tacit authorization and failed to intervene" during these events and later "refused to allow the keyed-up, ratcheted, hard plastic flex-cuffs to be removed and replaced for metal-locking handcuffs for over 5 hrs." *Id.* at 9. Defendant St. Andre "gave direct say-so and was a bystander" during the incident. *Id.* at 12. Von Rader then "escorted Plaintiff hoisted from behind by keyed up, ratcheted flex-cuffs to Program Outpost, sliding and slipping to the ground along the way in undershorts in frigid, icy, snow conditions." *Id.*

2. **Excessive force in violation of the Eighth Amendment against defendants Chapman, Gower, Weaver, and Houghland, for conduct at B Yard Building Outpost on December 31, 2002.**

These allegations concern plaintiff's treatment once removed from his cell while being questioned by correctional staff. Plaintiff alleges as follows: Defendant Weaver "punched, then grabbed Plaintiff out of [a] detention cage and slammed his head against the wall and applied pressure, while holding him with an armlock." *Id.* at 18. Defendant Houghland also punched and grabbed plaintiff out of a detention cage, pinned plaintiff's arm to the wall, and then "re-applied flex-cuffs ratcheted and keyed up, hoisting from Plaintiff's cuffs behind his back to B Yard Chowhall." *Id.* at 19. Defendant Gower "watched on" as defendants Weaver and

1   Houghland punched and grabbed plaintiff and slammed him against the wall.  *Id.* at 11.

2   Defendant Chapman "was a bystander in tacit authorization and refused to intervene" when

3   defendants Weaver and Houghland were "using interrogative excessive force against" plaintiff.

4   *Id.* at 10.

       **3.**     **Unlawful cavity search and medication confiscation in violation of the Eighth Amendment against defendant Hicks for conduct at the B Yard clinic on January 4 & 6, 2003.**

7        Plaintiff alleges that defendant Hicks conducted an unlawful cavity search on January 4,

8   2003 "outside the presence of correctional staff and a medical doctor."  *Id.* at 20-21.  Plaintiff

9   further alleges that defendant Hicks confiscated his stomach and eye medication on January 6,

10  2003 and did not return it.  *Id.* at 21.

       **4.**     **Unlawful conditions of confinement in violation of the Eighth Amendment against defendants Martinez and Bedford for conduct at Building 5, B Yard between December 31, 2002 and January 4, 2003.**

13       Plaintiff alleges that defendants Martinez and Bedford placed him in a filthy temporary

14  administrative segregation ("Ad. Seg.") cell "with frigid cell conditions" and "dirty and

15  unsanitary blankets, dirty feces stained sheets, [and] ripped up missing insulated mattresses."  *Id.*

16  at 21.  Defendants Martinez and Bedford refused to provide to plaintiff "showers, hygiene items,

17  soap, toothpaste, body wash, pencil, paper, request slips, complaint forms, [or] medical slips."

18  *Id.* at 22.  They also served plaintiff cold food.  *Id.*

       **5.**     **Deliberate indifference to medical needs in violation of the Eighth Amendment against defendant Bates for conduct at Building 5, B Yard between December 31, 2002 and January 4, 2003.**

21       Plaintiff alleges that defendant Bates, during his medical runs at Building 5, B Yard, was

22  indifferent to plaintiff's medical needs by "refusing to furnish medical request slips, deriding and

23  cursing Plaintiff when making verbal requests, making self-determined diagnosis, [being]

24  indifferent to Plaintiff's need of flu medications when symptoms were manifestly ripe, [and]

25  refusing bandages and sterile gauze for contusions, lacerations, and abrasions."  *Id.* at 23.

26  /////

**6.   Unlawful conditions of confinement in violation of the Eighth Amendment against defendants Little and Doyle for conduct at Building 8, D Yard on January 4, 2003.**

Plaintiff alleges that defendant Little "escorted Plaintiff to a cold, frigid cell with only a paper jumpsuit and jap flaps, issuing ripped up half mattresses, dirty and unsanitary feces stained sheets." *Id.* at 29.  Defendants Little and Doyle allegedly failed to provide plaintiff with clothing, underwear, socks and blankets because the laundry was not done.  *Id.*  Defendants Little and Doyle also allegedly failed to provide plaintiff with a towel, shower shoes, hygiene items, soap, toothpaste, pencil, paper, request slips, medical slips, complaint forms, a razor, and a phone call, and defendant Little "railed obscenities" at plaintiff for requesting the items.  *Id.* Plaintiff further alleges that Defendants Little and Doyle did not let him shower and served him cold food from January 4 to January 9, 2003.  *Id.*

**7.   Excessive force in violation of the Eighth Amendment against defendant Brown for conduct at Building 5, D Yard on January 9, 2003.**

Plaintiff alleges that defendant Brown subjected him to excessive force when extracting him from a cell by "key[ing] up handcuffs behind [plaintiff's] back" and slamming plaintiff against the wall, "pressing his night stick against the back of Plaintiff's head and neck, simultaneously hoisting ratcheting handcuffs higher and higher." *Id.* at 31.  Defendant Brown then allegedly "manhandled" plaintiff into a detention cage, where he was kept without a seat for over six hours, wearing just undershorts.  *Id.*

**8.   Unlawful conditions of confinement in violation of the Eighth Amendment against defendant Arnold for conduct at Building 8, D Yard on January 9, 2003.**

Plaintiff alleges that defendant Arnold periodically returned to the detention cage in which plaintiff had been placed and beat on it with a night stick, saying "Wake the fuck up!"  *Id.* at 32.  This conduct continued until "6 hrs. after 3rd watch arrived."  *Id.*

Defendants seek dismissal of claims (1), (2), (5), (7) and (8) for failure to exhaust as well as summary judgment of all the above-summarized claims.

## II.      Analysis

### A.      Summary Judgment Procedure

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994). At bottom, a summary judgment motion asks whether the evidence presents a sufficient disagreement to require submission to a jury.

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims or defenses. *Celotex Cop. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thus, the rule functions to "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments). Procedurally, under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson.*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

A clear focus on where the burden of proof lies as to the factual issue in question is crucial to summary judgment procedures. Depending on which party bears that burden, the party seeking summary judgment does not necessarily need to submit any evidence of its own. When

the opposing party would have the burden of proof on a dispositive issue at trial, the moving

party need not produce evidence which negates the opponent's claim.  *See e.g., Lujan v. National*

*Wildlife Fed'n*, 497 U.S. 871, 885 (1990).  Rather, the moving party need only point to matters

which demonstrate the absence of a genuine material factual issue.  *See Celotex*, 477 U.S. at 323-

24 (1986). ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive

issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings,

depositions, answers to interrogatories, and admissions on file.'").  Indeed, summary judgment

should be entered, after adequate time for discovery and upon motion, against a party who fails

to make a showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial.  *See id.* at 322.  In such a

circumstance, summary judgment must be granted, "so long as whatever is before the district

court demonstrates that the standard for entry of summary judgment . . . is satisfied."  *Id.* at 323.

To defeat summary judgment the opposing party must establish a genuine dispute as to a

material issue of fact.  This entails two requirements.  First, the dispute must be over a fact(s)

that is material, i.e., one that makes a difference in the outcome of the case.  *Anderson*, 477 U.S.

at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing

law will properly preclude the entry of summary judgment.").  Whether a factual dispute is

material is determined by the substantive law applicable for the claim in question.  *Id.*  If the

opposing party is unable to produce evidence sufficient to establish a required element of its

claim that party fails in opposing summary judgment.  "[A] complete failure of proof concerning

an essential element of the nonmoving party's case necessarily renders all other facts

immaterial."  *Celotex*, 477 U.S. at 322.

Second, the dispute must be genuine.  In determining whether a factual dispute is genuine

the court must again focus on which party bears the burden of proof on the factual issue in

question.  Where the party opposing summary judgment would bear the burden of proof at trial

on the factual issue in dispute, that party must produce evidence sufficient to support its factual

1   claim.  Conclusory allegations, unsupported by evidence are insufficient to defeat the motion.

2   *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989).  Rather, the opposing party must, by affidavit

3   or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue

4   for trial.  *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076.  More significantly, to

5   demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such

6   that a fair-minded jury "could return a verdict for [him] on the evidence presented."  *Anderson*,

7   477 U.S. at 248, 252.  Absent any such evidence there simply is no reason for trial.

8        The court does not determine witness credibility.  It believes the opposing party's

9   evidence, and draws inferences most favorably for the opposing party.  *See id.* at 249, 255;

10  *Matsushita*, 475 U.S. at 587.  Inferences, however, are not drawn out of "thin air," and the

11  proponent must adduce evidence of a factual predicate from which to draw inferences.  *American*

12  *Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir.1991) (Kozinski, J.,

13  dissenting) (citing *Celotex*, 477 U.S. at 322).  If reasonable minds could differ on material facts

14  at issue, summary judgment is inappropriate.  *See Warren v. City of Carlsbad*, 58 F.3d 439, 441

15  (9th Cir. 1995).  On the other hand,"[w]here the record taken as a whole could not lead a rational

16  trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita*,

17  475 U.S. at 587 (citation omitted); *Celotex.*, 477 U.S. at 323 (If the evidence presented and any

18  reasonable inferences that might be drawn from it could not support a judgment in favor of the

19  opposing party, there is no genuine issue).  Thus, Rule 56 serves to screen cases lacking any

20  genuine dispute over an issue that is determinative of the outcome of the case.

21       Defendants' motion for summary judgment included a notice to plaintiff informing him

22  of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil

23  Procedure.  ECF No. 239; *see Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*,

24  154 F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999); *Klingele v.*

25  *Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

26  /////

B.    **Analysis of Plaintiff's 8th Amendment Claims**

      1.    <u>**Exhaustion**</u>

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions [under section 1983 of this title] until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Prison conditions" subject to the exhaustion requirement have been defined broadly as "the effects of actions by government officials on the lives of persons confined in prison . . . ." 18 U.S.C. § 3626(g)(2); *Smith v. Zachary*, 255 F.3d 446, 449 (7th Cir. 2001); *see also Lawrence v. Goord*, 304 F.3d 198, 200 (2d Cir. 2002). To satisfy the exhaustion requirement, a grievance must alert prison officials to the claims the plaintiff has included in the complaint, but need only provide the level of detail required by the grievance system itself. *Jones v. Bock*, 549 U.S. 199, 218-19 (2007); *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002) (purpose of exhaustion requirement is to give officials "time and opportunity to address complaints internally before allowing the initiation of a federal case").

Prisoners who file grievances must use a form provided by the California Department of Corrections and Rehabilitation, which instructs the inmate to describe the problem and outline the action requested. The grievance process, as defined by California regulations, has three levels of review to address an inmate's claims, subject to certain exceptions. *See* Cal. Code Regs. tit. 15, § 3084.7. Administrative procedures generally are exhausted once a plaintiff has received a "Director's Level Decision," or third level review, with respect to his issues or claims. *Id.* § 3084.1(b).

Proper exhaustion of available remedies is mandatory, *Booth v. Churner*, 532 U.S. 731, 741 (2001), and "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]" *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). For a remedy to be "available," there must be the "possibility of some relief . . . ." *Booth*, 532 U.S. at 738. Relying on *Booth*, the Ninth Circuit has held:

> [A] prisoner need not press on to exhaust further levels of review once he has received all "available" remedies at an intermediate level of review or has been reliably informed by an administrator that no remedies are available.

*Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005).

In the Ninth Circuit, motions to dismiss for failure to exhaust administrative remedies are normally brought under Rule 12(b) of the Federal Rules of Civil Procedure. *See Albino v. Baca*, 697 F.3d 1023, 1029 (9th Cir. 2012). Nonetheless, it remains well established that credibility of witnesses over material factual disputes cannot be resolved on paper. Thus, when ruling on an exhaustion motion requires the court to look beyond the pleadings in the context of disputed issues of fact, the court must do so under "a procedure closely analogous to summary judgment." *Wyatt v. Terhune*, 315 F.3d 1108, 1119, n.14 (9th Cir. 2003). Doing so ensures that a process is followed to test whether disputes over facts pertaining to whether plaintiff actually exhausted available remedies are truly genuine and material and therefore warrant live testimony, or whether the dispute(s) may be disposed of by unrefuted declarations and exhibits. Therefore, following the suggestion in *Wyatt*, and because care must be taken not to resolve credibility on paper if it pertains to disputed issues of fact that are material to the outcome, the undersigned applies the Rule 56 standards to exhaustion motions that require consideration of materials extrinsic to the complaint.[1] *See Chatman v. Felker*, No. Civ. S-06-2912 LKK EFB, 2010 WL 3431806, at *2-3 (E.D. Cal. Aug. 31, 2010).

Failure to exhaust is an affirmative defense in the sense that defendants bear the burden of proving plaintiff did not exhaust available remedies. *Wyatt*, 315 F.3d at 1119. To bear this burden:

> a defendant must demonstrate that pertinent relief remained available, whether at unexhausted levels of the grievance process or through awaiting the results of the relief already granted as a result of that process. Relevant evidence in so demonstrating would include statutes, regulations, and other official directives

---

[1] Here, defendants rely on testimonial evidence in the form of declarations from two prison officials and a documentary record to establish the facts in support of their contention that plaintiff failed to exhaust.

that explain the scope of the administrative review process; documentary or testimonial evidence from prison officials who administer the review process; and information provided to the prisoner concerning the operation of the grievance procedure in this case . . . . With regard to the latter category of evidence, information provided [to] the prisoner is pertinent because it informs our determination of whether relief was, as a practical matter, "available."

*Brown*, 422 F.3d at 936-37 (citations omitted).

Defendants' motion to dismiss included a notice to plaintiff informing him of the requirements for opposing a motion to dismiss for failure to exhaust available administrative remedies.  ECF No. 240; *see Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Stratton v. Buck*, 697 F.3d 1004, 1008-10 (9th Cir. 2012); *Wyatt v. Terhune*, 315 F.3d 1108, 1115, 1120 n.15 (9th Cir. 2003).

Defendants claim that plaintiff has not exhausted several of his claims, specifically, those claims listed as (1), (2), (5), (7), and (8), above brought against defendants Briddle, Chapman, Gower, St. Andre, Wilbur, Pribble, Von Rader, Kelsey, Weaver, Houghland, Bates, Brown, and Arnold.  Defendants' evidence shows that plaintiff submitted three inmate appeals while at High Desert State Prison.  ECF No. 238-1, Decl. of M. Dangler ISO Defs.' Mot. for Summ. J. ¶¶ 7-8; ECF No. 238-2, Decl. of N. Grannis ISO Defs.' Mot. for Summ. J. ¶ 10.  Two of those appeals are not relevant to the remaining claims in this case.  Dangler Decl. ¶ 8, Grannis Decl. ¶ 10 (concerning an "out-of-bounds" write-up in 2001 and a confiscated cassette player).  In the remaining appeal (Log No. HDSP B-03-00195 at the first and second levels and Log No. 0210911 at the third level; hereinafter "Appeal 195"), plaintiff alleged that

High Desert State Prison wrongfully profiled African American inmates (only) of being a[n] immediate threat [to] safety of others and institutional security, by a[n] unreliable gang activity confidential information, which deprived them of privileges, access to court, and property, which resulted in cruel indifference and treatment, violating health act, human rights, and federal constitutional 4th, 5th, 6th, 8th, and 14th amendment, and due process rights.

ECF No. 238-1 at 13. Specifically, plaintiff alleged that, on December 31, 2002, he was among group of black inmates who were "taken out of their cells handcuffed behind their back with

mechanical restraints and escorted partially dressed in snow conditions to B yard watch office, stripped searched (including cavity), interrogated with questions and placed in cages." *Id.* at 15. The inmates were then "dressed out in orange and handcuffed behind our backs with plastic strip tie straps . . . which cut off our blood circulation, cutting into our forearms and wrists, with shoulders, arms, and back being in excruciating pain." *Id.*  The inmates were placed back in their old cells "with nothing inside but a mattress" and were given "filthy sheets and blankets off the floor." *Id.* at 16.  The inmates were not provided clothes, towels, hygiene items, shower slides, appeal forms, or stationary. *Id.*  "Two days later we were corralled, handcuffed, and systematically led back to B Yard Clinic . . ., stripped and cavity searched . . ., [and again] handcuffed with the same filthy linen and blankets in betwixt our arms." *Id.*  The inmates were then transported to a temporary Ad. Seg. unit, where they were "placed in cages [and] stripped searched (also cavity)." *Id.* at 17.  The inmates received only a pair of undershorts and a pair of "jap flaps," but no towels, clothing, shower slides, "fish kit," hygiene items, medication, stationary, or "pen fillers," and were not allowed access to the law library. *Id.*  The inmates were "shuffled to unsanitized and filthy showers" and placed them in double cells. *Id.*  While housed in Ad. Seg., prison staff "implemented forced cell evacuations of both inmates to shower" and served "underportioned food" which was picked up again "moments after serving." *Id.*  Days after arrival at the temporary Ad. Seg. unit, staff passed out "filthy, stained, unwashed t-shirts, undershorts, and towels, with 1/2 sheets and so on." *Id.*

Plaintiff contends that he exhausted claims (1), (2), (5), (7), and (8) above brought against defendants Briddle, Chapman, Gower, St. Andre, Wilbur, Pribble, Von Rader, Kelsey, Weaver, Houghland, Bates, Brown, and Arnold in Appeal 195, which was denied at the third level on May 22, 2003.  ECF No. 247-1, Pl.'s "Admission or Denial of Defs.' Statement of Undisputed Facts" at 30-35; ECF No. 238-2 at 7-8.  Having carefully reviewed Appeal 195, the court must agree with defendants that certain claims brought in this action were not included and are therefore unexhausted.  Appeal 195 contains no mention of excessive force used against

plaintiff in extracting him from his cell on December 31, 2002 (the bulk of claim (1)), contains limited information regarding excessive force in his questioning after his cell extraction on the same day (claim (2)), and contains no mention of excessive force in extracting him from his cell on January 9, 2003 (claim (7)).  Nor does it mention defendant Arnold's alleged interruptions of plaintiff's sleep on January 9, 2003.  Lastly, Appeal 195 does not mention refusal by any defendant to provide medical request slips or treatment for flu symptoms and abrasions from January 4 through January 9, 2003 (claim (5).

Plaintiff argues generally that he exhausted all of his claims through Appeal 195 by alleging "cruel and indifferent treatment" and discrimination.  ECF No. 247-1 at 30-35.  Plaintiff argues that, under the relevant regulations as they existed in 2002, he was not required to name all individuals involved in the incident.  While that may be true, plaintiff was required to describe the problem in a manner that would alert officials to the claims he has included in his complaint.  Appeal 195 in large part did not do so, and accordingly dismissal of many of plaintiff's claims is appropriate.

### a.   Claim (1)

Because plaintiff did not include his allegations of excessive force against defendants Pribble, Wilbur, Kelsey, Briddle, or St. Andre in any administrative appeal pursuant to California Code of Regulations tit. 15, §§ 3084.1 *et seq.*, claim (1) should be dismissed without prejudice with regard to these defendants.  *See Morton v. Hall*, 599 F.3d 942, 945-46 (9th Cir. 2010) (finding dismissal for failure to exhaust appropriate where the prisoner's grievance failed to alert the prison to the nature of the wrong for which redress was sought).

With respect to defendant Von Rader, plaintiff did not administratively challenge his alleged use of excessive force on December 31, 2002 either, and those allegations against defendant Von Rader must also be dismissed.  However, plaintiff did allege in Appeal 195, without naming defendant Von Rader specifically, that he was escorted "partially dressed in snow conditions to B Yard watch outpost," which dovetails with his allegation in this case that

13

1   defendant Von Rader escorted him to the outpost "sliding and slipping along the way in

2   undershorts in frigid, icy, snow conditions."  These allegations were sufficient to apprise the

3   prison of the wrong for which plaintiff sought redress (having been subjected to cold conditions

4   without proper clothing), and plaintiff's claim against defendant Von Rader for escorting him in

5   undershorts through the cold has therefore been exhausted.  *See Griffin v. Arpaio*, 557 F.3d 1117,

6   1121 (9th Cir. 2009) (holding that, to properly exhaust a claim where the prison grievance form

7   instructs the inmate to "describe" the problem but does not elicit further factual specificity, a

8   grievance need not include all relevant information that the prisoner can reasonably obtain, but

9   rather need only alert the prison to the nature of the wrong for which redress is sought).  As

10  defendant Von Rader does not advance any other arguments for dismissal or summary

11  adjudication of this claim, plaintiff's claim that, on December 31, 2002, defendant Von Rader

12  escorted him partially dressed through frigid conditions from his cell to the watch outpost

13  remains to be adjudicated on the merits.

14                      **b.      Claim (2)**

15          As noted above, Appeal 195 contains little mention of excessive force used against

16  plaintiff at B Yard Building Outpost after he was removed from his cell on December 31, 2002.

17  There is no allegation therein that plaintiff was punched, grabbed out of the detention cage, or

18  slammed against the wall.  Accordingly, plaintiff's allegations against defendant Weaver and

19  Houghland for such acts must be dismissed due to plaintiff's failure to exhaust.  Similarly,

20  plaintiff's claims that defendant Gower watched on and that defendant Chapman "was a

21  bystander in tacit authorization and refused to intervene" while defendants Weaver and

22  Houghland punched him, grabbed him, and slammed him against the wall must be dismissed for

23  plaintiff's failure to exhaust.

24          Plaintiff did allege in Appeal 195, however, that prison staff "handcuffed [him] behind

25  [his] back with plastic tie straps . . . which cut off [his] blood circulation, cutting into [his]

26  forearms and wrists, with shoulders, arms, and back being in excruciating pain," which dovetails

with his allegation in this action that defendant Houghland applied "flex-cuffs ratcheted and keyed up, hoisting from Plaintiff's cuffs behind his back to B Yard Chowhall." These allegations were sufficient to apprise the prison of the wrong for which plaintiff sought redress (staff's use of excessive force in handcuffing him), and plaintiff's claim against defendant Houghland for handcuffing plaintiff too tightly is therefore exhausted. *See Griffin*, 557 F.3d at 1121. Plaintiff's claim that defendant Chapman "was a bystander in tacit authorization and refused to intervene" while defendant Houghland applied the too-tight plastic cuffs is exhausted for the same reason. Accordingly, dismissal of plaintiff's claims that defendant Houghland subjected him to excessive force by applying too-tight cuffs on December 31, 2002 at B Yard Building Outpost, and that defendant Chapman tacitly authorized that conduct and refused to intervene is not warranted and these claims remain to be adjudicated on the merits.

### c. Claim (5)

As noted above, Appeal 195 contains no allegation that, while housed at his old cell at Building 5, B Yard between December 31, 2002 and January 4, 2003, defendant Bates or any other staff were indifferent to plaintiff's medical needs by, *inter alia*, refusing medical request slips and failing to treat plaintiff's flu symptoms and abrasions. The sole mention of lack of medical care in the appeal concerns the period of January 4 through January 9, 2003, after plaintiff had been transported to an Ad. Seg. unit at Building 8, D Yard , mentioning generally that the segregated inmates were not provided medication. As plaintiff failed to apprise the prison in his inmate appeals of his claim that he was denied medical care between December 31, 2002 and January 4, 2003, claim (5) must be dismissed.

### d. Claim (7)

Plaintiff's Appeal 195 contains no allegation of excessive force used against him in extracting him from his cell at Building 5, D Yard on January 9, 2003. Accordingly, plaintiff's claim (7), which levels such allegations against defendant Brown, must be dismissed.

/////

1          **e.**        **Claim (8)**

2          Appeal 195 also lacks any allegation that his sleep was interfered with by defendant

3  Arnold allegedly yelling and beating on his cell with a night stick at Building 5, D Yard on

4  January 9, 2003.  Accordingly, plaintiff's claim (8), which levels such allegations against

5  defendant Arnold, must be dismissed.

6          **2.**      **Conditions of Confinement Claims**

7          In Claim (4), plaintiff alleges that the conditions of his confinement, imposed by

8  defendants Martinez and Bigford, at Building 5, B Yard between December 31, 2002 and

9  January 4, 2003 violated the Eighth Amendment.  The conditions challenged by plaintiff are: (1)

10  "frigid cell conditions"; (2) dirty, unsanitary, and ripped up bedding; (3) no showers; (4) no

11  hygiene items; (5) no paper, pen, or request slips; and (6) cold food.  As a result of these

12  conditions, plaintiff alleges that he "suffered mental anguish, humiliation, embarrassment [and]

13  psychological injury of a permanent nature."  ECF No. 62, Third Am. Compl. at 22.  Plaintiff

14  seeks compensatory and punitive damages against defendants Martinez and Bigford.  *Id.*

15          In Claim (6), plaintiff similarly alleges that the conditions of his confinement, imposed

16  by defendants Little and Doyle, at Building 8, D Yard between January 4, 2003 and January 9,

17  2003 violated the Eighth Amendment.  The conditions challenged by plaintiff are: (1) a frigid

18  cell; (2) inadequate clothing and bedding; (3) unsanitary and ripped up bedding; (4) no hygiene

19  items; (5) no paper, pen, or request slips; (6) no phone calls; (7) no shower; (8) no time in the

20  yard to exercise; and (9) cold food.  As a result of these conditions, plaintiff alleges that he

21  "suffered needless embarrassment, humiliation, mental anguish, psychological injury of a

22  permanent nature, shock" and "frustration."  *Id.* at 29 & 30.  Plaintiff seeks compensatory and

23  punitive damages against defendants Little and Doyle.  *Id.*

24          Confinement in prison constitutes "punishment" and is thus subject to scrutiny under the

25  Eighth Amendment, which "prohibits punishments which . . . involve the unnecessary and

26  wanton infliction of pain . . . or are grossly disproportionate to the severity of the crime."

1  *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981) (internal citations and quotation marks

2  omitted).  Thus, it is cruel and unusual punishment to deny medical care or "basic human needs"

3  and may be cruel and unusual punishment to deny "the minimal civilized measure of life's

4  necessities."  *Id.* at 347.  Prison officials "must provide humane conditions of confinement,"

5  including "adequate food, clothing, shelter, and medical care."  *Farmer v. Brennan*, 511 U.S.

6  825, 832-33 (1994).  To succeed on an Eighth Amendment conditions-of-confinement claim, a

7  prisoner must show that (1) the defendant prison official's conduct deprived him or her of the

8  minimal civilized measure of life's necessities (the objective component) and (2) that the

9  defendant acted with deliberate indifference to the prisoner's health or safety (the subjective

10  component).  *Id.* at 834.  To show deliberate indifference, the prisoner must establish that the

11  defendant knew of and disregarded an excessive risk to inmate health or safety; "the official

12  must both be aware of facts from which the inference could be drawn that a substantial risk of

13  serious harm exists, and he must also draw the inference."  *Id.* at 837.  A prison official may thus

14  be free from liability if he or she did not know of the risk or took reasonable action in response

15  to the risk.  *Id.* at 844.

16      Plaintiff's claims against defendants Bigford, Martinez, Doyle, and Little for depriving

17  him of hot food, paper, pen, request slips, complaint forms, phone calls, and yard exercise

18  between December 31, 2002 and January 9, 2003 fail as a matter of law, as these acts or

19  omissions, even if true, did not amount to deprivations of the minimal civilized measure of life's

20  necessities and thus do not satisfy the objective component of an Eighth Amendment violation.

21  Plaintiff does not allege that the food he was served was inedible or otherwise inadequate to

22  maintain health, and in fact he testified at his deposition that the food was the same food served

23  to the general population and was edible.  ECF No. 237-9 at 132:18-133:5, 169:8-14 (plaintiff's

24  deposition testimony).  Because prison food "need not be tasty or aesthetically pleasing," but

25  only adequate to maintain health, cold food is not a deprivation sufficient to constitute cruel and

26  unusual punishment under the Eighth Amendment.  *LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th

Cir. 1993).  Deprivation of paper, pen, request slips, complaint forms, and phone calls for a period of 9-10 days similarly does arise to the level of extreme deprivation prohibited by the Eighth Amendment, as these deprivations do not depart dramatically from accepted standards for conditions of confinement, create inhumane conditions, inflict pain or injury, create a risk to health or safety, or otherwise deprive inmates of basic necessities.  *See Overton v. Bazzetta*, 539 U.S. 126, 136-37 (2003) (holding that a two-year ban on visitation for inmates with two substance-abuse violations did not violate the Eighth Amendment).  Similarly, the deprivation of yard exercise for 9-10 days without any allegation or evidence that the deprivation caused plaintiff medical harm does not amount to cruel and unusual punishment.  *May v. Baldwin*, 109 F.3d 557, 565 (9th Cir. 1997) (holding that a 21-day deprivation of outdoor exercise was not cruel and unusual because "a temporary denial of outdoor exercise with no medical effects is not a substantial deprivation.").

Plaintiff's allegations that he was deprived of a sufficiently warm cell, sufficient clothing, sanitary bedding, hygiene items, showers, and medical slips cannot be disposed of as a matter of law, however, as such deprivations may be extreme enough to violate the Eighth Amendment. *See Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (stating that an Eighth Amendment violation may be established by conduct that deprives an inmate of basic human needs, including the need for warmth); *Pollard v. GEO Group, Inc.*, 607 F.3d 583, 598-99 (9th Cir. 2010) (noting that an inmate's exposure to human waste may violate the Eighth Amendment and citing *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (concluding that exposure to human waste, even for 36 hours, would constitute a sufficiently serious deprivation to violate Eighth Amendment) and *Vinning-El v. Long*, 482 F.3d 923, 924 (7th Cir. 2007)); *Johnson v. Lewis*, 217 F.3d 726, 735 (9th Cir. 2000) ("The Eighth Amendment does not tolerate prison officials' deliberate indifference, in the absence of exigent circumstances, to substantial deprivations of adequate shelter, food, drinking water, and sanitation."); *Conn v. City of Reno*, 591 F.3d 1081, 1094 (9th Cir. 2010) (stating that a prison official's deliberate indifference to an inmate's serious medical

1    need violates the Eighth Amendment); *Anderson v. County of Kern*, 45 F.3d 1310, 1314 (9th Cir.

2    1995) "[S]ubjection of a prisoner to lack of sanitation that is severe or prolonged can constitute

3    an infliction of pain within the meaning of the Eighth Amendment.").  While the alleged

4    deprivation of hygiene items and showers may not alone have been serious enough to violate the

5    Eighth Amendment due to the short time period involved, it is conceivable that those

6    deprivations, when combined with the alleged provision of unsanitary bedding, denial of medical

7    care and sufficient clothing, and cold cell conditions created a situation in which plaintiff was

8    forced to choose between freezing or exposing himself to unsanitary conditions without the

9    ability to clean himself.  *See Wilson,* 501 U.S. at 304 (stating that the denial of adequate bedding

10   may, in combination with cold cell conditions, violate the Eighth Amendment).  Thus the court

11   must look to the evidence submitted by each party on the issues of adequate sanitation, warmth,

12   and medical care.

13          Defendants Bigford and Martinez argue that the undisputed facts show that plaintiff was

14   not denied adequate bedding, clothes, or showers.  Defendants point to plaintiff's deposition, in

15   which he testified that he was clothed in a jumpsuit and flip-flops, that he was issued bedding

16   within a half-hour of defendants calling to see if bedding was available, that he received a

17   shower within one or two days, and that the bedding smelled like ammonia (and thus, defendants

18   argue, was clean).  Plaintiff's deposition testimony, however, is mostly unhelpful to defendants.

19   Plaintiff testified that the conditions were snowy when he and other inmates were placed back in

20   their old cells, which had been stripped of all amenities.  ECF No. 238-9 at 122:1-24.  The

21   conditions were icy and frigid, with the air conditioner blasting.  *Id.* at 133:10-12.  When the

22   inmates received bedding, it was unclean, taken from a bin of dirty laundry.  *Id.* at 124:2-19.

23   The bedding was stained with feces and vomit and was "ammonia scented," that is, it exuded a

24   "pissy" smell.  *Id.* at 124:20-125:3.  Despite the cold, the inmates were reluctant to use the filthy

25   bedding.  *Id.* at 133:10-14.  The mattress provided by defendants was ripped up following a

26   search for contraband and stained with "piss, feces, vomit, sweat."  *Id.* at 125:22-126:18.

1  Plaintiff asked defendants for hygiene items, soap, and a shower. *Id.* at 126:19-24.  Defendants

2  allowed plaintiff to shower one or two days after being placed back in his old cell, but was not

3  provided with soap. *Id.* at 128:10-24.  Plaintiff asked defendants for bandages for his "cuts,

4  abrasions, and contusions and lacerations," but received none. *Id.* at 131:10-24.  Defendants told

5  plaintiff to put his medical requests on a piece of paper to be provided to medical staff, but

6  plaintiff received no response. *Id.* at 131:15-17.  Defendants' evidence thus fails to show the

7  absence of a triable issue of material fact as to whether defendants Bigford and Martinez were

8  deliberately indifferent to unconstitutional conditions of confinement by denying plaintiff

9  sanitary bedding, clothes, hygiene items, and hygienic showers.

10          However, plaintiff's evidence fails to raise a triable issue of material fact as to whether

11  defendants Bigford and Martinez were deliberately indifferent to plaintiff's serious medical

12  needs.  To succeed on an Eighth Amendment claim for failure to provide medical treatment, a

13  plaintiff must show a serious medical need (i.e., a need such that a failure to treat the plaintiff's

14  condition could result in further significant injury or the unnecessary and wanton infliction of

15  pain) and that the defendant was deliberately indifferent in response to the need. *Conn*, 591 F.3d

16  at 1094-95.  Plaintiff testified in his deposition that he requested treatment only for "cuts,

17  abrasions, and contusions and lacerations" while in temporary Ad. Seg.  ECF No. 238-9 at

18  131:10-24.  Plaintiff submits no evidence that these injuries are of the type such that a failure to

19  treat could result in further significant injury or the unnecessary and wanton infliction of pain.

20  In addition, plaintiff fails to rebut the evidence submitted by defendants Bigford and Martinez

21  that they provided plaintiff with paper to communicate his requests to medical staff.  On this

22  record a reasonable jury could not find that Bigford and Martinez were deliberately indifferent to

23  his medical requests.  Accordingly, the dispute that plaintiff raises if not a genuine dispute, *see*

24  *Anderson*, 477 U.S. at 248, 252, and Bigford and Martinez entitled to summary judgment on this

25  claim.

26  /////

20

Defendants Bigford and Martinez additionally argue that they are entitled to summary judgment on plaintiff's claim for compensatory damages for the additional reason that it is undisputed that plaintiff did not suffer more than *de minimus* physical injury as a result of their alleged misconduct.  Under 42 U.S.C. § 1997e(e), "no federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  This requirement has been interpreted to mean that a prisoner prosecuting a § 1983 case may not obtain compensatory damages (but may obtain nominal and/or punitive damages) absent a showing of more than *de minimus* physical injury.  *Oliver v. Carey*, 289 F.3d 623, 627, 629-30 (9th Cir. 2002).  Here, plaintiff's complaint alleged only psychological injuries resulting from the alleged misconduct of defendants Bigford and Martinez.  In his deposition, plaintiff claimed in addition that he contracted flu symptoms as a result.  ECF No. 238-9 at 133:6-134:14 (describing symptoms as "cough, sneeze, tepid fingertips, toes cold"); Pl.'s First Opp'n to Defs.' Mot. for Summ. J., Ex. E at 155:20-156:1 (describing symptoms as "[s]evere headaches, migraines, sniffles, sneezing, body aches" and "raspy throat"); *but see id.*, Ex. C, Attach. 7 & 8 (reports of medical staff indicating that plaintiff exhibited or stated no injuries when observed by medical staff on December 31, 2002 and January 2, 2003).  The court agrees with defendants that plaintiff's alleged flu symptoms are *de minimus* and thus summary judgment is appropriate on plaintiff's claim for compensatory damages against defendants Bigford and Martinez, which are all premised on emotional or *de minimus* physical injuries.[2]  *See Canell v. Multnomah County*, 141

---

[2]For the first time in his opposition to the motion for summary judgment, plaintiff alleges that he has suffered a myriad of physical ailments all as a result of defendants' alleged misconduct between December 31, 2002 and January 10, 2003.  ECF No. 247-1 at 147.  According to plaintiff, he suffered

> irreparable neck, spleen, back, head, and shoulder injury of long time effects of
> these areas, that was not perceptible and slowly manifesting also, causing
> symptoms when no physician could isolate the problem for years, misdiagnosing
> various pains giving indications of hive-like sensations, itchy, scratchy, sharp
> stinging tingles, pain of migranes [sic], nerve damage from cervical, mid-back,

F. Supp. 2d 1046, 1053-54 (D. Or. 2001) (allegations of foot fungus, nose sores, constipation and a winter cold amounted only to *de minimus* injuries precluding relief for compensatory damages under § 1997e(e)).

Defendants Little and Doyle similarly argue that the undisputed facts show that they did not deprive plaintiff of warmth, adequate clothing, sanitary bedding, hygiene items, or medical assistance. Apart from plaintiff's deposition transcript, Little and Doyle submit a log with entries dating from January 2 through January 10, 2010. ECF No. 238-6, Decl. of S. Doyle at 10-11; ECF No. 238-7, Decl. of J. Little at 7-8. The log indicates that, on January 3, 2010, plaintiff was provided with "all adeseg clothing & linen," a "fish kit," and a jumpsuit. ECF No. 238-6 at 10-11. According to defendants Doyle and Little, the standard issue of Ad. Seg. clothing and linen includes "three t-shirts, three boxers, three pairs of socks, shoes, a jumpsuit, two blankets, two sheets, and two towels." ECF No. 238-6 ¶ 9; ECF No. 238-7 ¶ 8. All clothing and linen that Doyle provided to plaintiff was clean and sanitary. ECF No. 238-6 ¶ 10. A "fish kit" includes "one roll of toilet paper, one bar of soap, one toothbrush, toothpowder, a comb, transport shoes, one pen filler to write with, one plastic spoon, one paper cup, two 602 inmate appeal forms, medical request and Americans with Disabilities Act forms, inmate request for

---

and lumbar areas of the spine down to the legs prickly shooting pain everywhere, and the splenic rupture of trauma damage due to (Dfdt's) excessive force, which caused the development of calcification stages of numerous massive cyst-like globulations, which was camouflaged by extreme heart burn, acid reflux in throat and chest pain symptoms. Sometime [sic] the pain seemed to come and go, but would gradually intensify and worsen as I came back throughout return visits, until it felt like I was having a heart attack, and extreme stiffness in arms, shoulders, neck, back wrists, with constipation, tightening in abdomen, and breathing was short winded.

*Id.* at 146-47. Plaintiff does not specify which alleged act by which defendant(s) in the complaint he believes are responsible for these symptoms. Nor has plaintiff submitted any evidence that showing that he suffers from these ailments (other than acid reflux; *see id.* at 175) or substantiating his claim that the ailments were caused by any defendant's alleged conduct. Accordingly, no rational trier of fact could rely on these exceedingly speculative allegations to determine that defendants Bigford or Martinez caused plaintiff more than *de minimus* physical injury.

1   interview form, trust withdrawal form, U-Save-'Em envelope (intra-prison mail envelope, five

2   envelopes, and five blank sheets of paper." ECF No. 238-6 ¶ 11; ECF No. 238-7 ¶ 9.  The log

3   further indicates that plaintiff received showers on January 3, 6, 8, and 10.  ECF No. 238-6 at 10-

4   11.

5           In his deposition, however, plaintiff testified that he had only a paper jumpsuit and did

6   not receive clothes until he had been in Ad. Seg. at D Yard for five days, and that the clothes he

7   did receive were dirty and "smelled like pee."  ECF No. 238-9 at 164:2-17.  While he received

8   showers, the showers were filthy.  *Id.* at 164:22-25.  Defendants Little and Doyle refused to

9   provide plaintiff with medical request slips and refused to call medical staff.  *Id.* at 168:12-19.

10          While the log provides evidence in support of defendants' assertion that they provided

11  plaintiff with adequate linen and hygiene items, it does not show that fact conclusively.  Plaintiff

12  testified under oath that he was not provided with clean clothes and submitted sworn allegations

13  that he was not provided with adequate bedding, clothing, warmth, and sanitation.  There clearly

14  is a dispute between percipient witnesses as to what acutely occurred.  Accordingly, the court

15  concludes that plaintiff has raised a triable issue of fact on whether defendants Little and Doyle

16  violated his Eighth Amendment rights by failing to provide these necessities and resolution of

17  the credibility of the conflicting witnesses must await trial.

18          Plaintiff has not raised a triable issue of fact regarding whether defendants Little and

19  Doyle denied him medical treatment, however, as he has failed to submit evidence that

20  defendants were deliberately indifferent to a serious medical need he suffered from while housed

21  in D Yard between January 4 and January 9, 2010.  Relatedly, as plaintiff has not alleged or

22  come forward with evidence showing that he suffered a more than *de minimus* physical injury as

23  a result of defendants Doyle's and Little's alleged misconduct, summary judgment is appropriate

24  on his claim for compensatory damages against these defendants, as that claim is premised solely

25  on emotional injuries.  ECF No. 238-9 at 170:4-14 (plaintiff testifying that defendants Little and

26  Doyle did not cause him any physical injury).

1    Lastly, defendants Bigford, Martinez, Little, and Doyle contend that they are entitled to

2    qualified immunity from plaintiff's claims because plaintiff cannot show that their conduct

3    violated his constitutional rights because they provided plaintiff with all of life's basic

4    necessities.  *See Saucier v. Katz*, 533 U.S. 194, 201 (2001) (holding that a defendant official is

5    entitled to qualified immunity if, taking the facts in the light most favorable to the plaintiff, the

6    facts show no constitutional violation, or, if the facts show a constitutional violation, the right

7    asserted was not clearly established at the time of the official's contested conduct).  The court's

8    determination that there exists a genuine dispute of material facts regarding whether defendants'

9    conduct violated plaintiff's Eighth Amendment rights forecloses defendants' claim that the facts,

10   taken in the light most favorable to plaintiff, do not show a constitutional violation.  Summary

11   judgment in defendants' favor on grounds of qualified immunity is therefore not warranted.

12   Accordingly summary judgment must be denied on plaintiff's claims that defendants

13   Bigford and Martinez violated his Eighth Amendment rights by denying him adequate bedding,

14   warmth, clothing, hygiene items, and showers between December 31, 2002 and January 4, 2003

15   in B Yard and plaintiff's claims that defendants Little and Doyle violated his Eighth Amendment

16   rights by denying him adequate bedding, warmth, clothing, hygiene items, and showers between

17   January 4 and January 10, 2003 in D Yard.  Summary judgment is appropriate, however, on

18   plaintiff's claims that defendants Bigford, Martinez, Little, and Doyle violated his Eighth

19   Amendment rights by denying him warm food, paper, pen, request slips, complaint forms,

20   request slips, phone calls, yard exercise, and medical care.  Summary judgment is further

21   appropriate on plaintiff's claims for compensatory damages against defendants Bigford,

22   Martinez, Little, and Doyle for alleged emotional injuries.  Plaintiff may continue to seek

23   nominal and/or punitive damages against those defendants for his remaining claims.[3]  *See Oliver*,

24

25         [3] Although plaintiff does not expressly seek nominal damages, it is consistent with a
     claim for nominal damages, and thus the court construes the complaint to make such a claim.
26   *Oliver*, 289 F.3d at 630.

289 F.3d at 629-30 (holding that § 1997e(e) does not bar actionable claims for compensatory, punitive, and nominal based on constitutional violations rather than on emotional injury); *Searles v. Van Bebber*, 251 F.3d 869, 879-81 (10th Cir. 2001) (holding that § 1997e(e) does not bar a claim for nominal and punitive damages for alleged constitutional violations even absent physical injury); *Allah v. Al-Hafeez*, 226 F.3d 247, 251-52 (3d Cir. 2000) (same).

### 3.   Strip Search Claim

In Claim (3), plaintiff alleges that defendant Hicks violated his Eighth Amendment rights by subjecting him to a body cavity search on January 4, 2003 outside the presence of correctional staff and a medical doctor.  Defendant Hicks disputes that the search in question was a "cavity" search, as no physical intrusion of plaintiff's body cavities took place.  Plaintiff's deposition testimony shows that plaintiff was stripped, made to squat and cough, and that defendant Hicks felt his abdomen and required him to spread his buttocks so that she could visually inspect his rectum.  Defs.' Evidence, Ex. I, Attach. 15 at 138:10-140:4.  Plaintiff's allegations, even if true, do not suffice as a matter of law to establish a violation of the Eighth Amendment.  *See Johnson v. Phelan*, 69 F.3d 144, 150-51 (7th Cir. 1995) (holding that cross-sex monitoring of inmates was not inhumane and thus did not satisfy the objective component of an Eighth Amendment claim).  Accordingly, summary judgment should be granted in favor of defendant Hicks on plaintiff's claim that the visual body cavity search violated his Eighth Amendment rights.

### 4.   Medication Confiscation Claim

Plaintiff further claims in claim (3) that defendant Hicks violated his rights under the Eighth Amendment when she confiscated his acid reflux medication and eye drops and did not return them.  Plaintiff essentially claims that he was deprived of treatment for his heartburn and dry eye conditions from the time of the confiscation (January 6, 2010) until he received replacement medications within a month of his return to his cell in B Yard on January 10, 2003. /////

1   *See* ECF No. 238-9 at 144:8-146:13, 153:4-23.  Defendants argue that these facts do not satisfy

2   the objective or subjective components of an Eighth Amendment claim.

3         Plaintiff stated at deposition that he did not suffer any physical injury as the result of

4   defendant Hicks's conduct, although he appeared to be referring solely to the body search.  *Id.* at

5   146:14-22.  In his verified complaint, plaintiff alleges that he suffered "needless sinus pain and

6   chronic migraine headaches" due to defendant Hicks's actions.  ECF No. 62 at 21.  These sworn

7   allegations may be sufficient to establish the objective component of an Eighth Amendment

8   claim, but plaintiff has not come forward with evidence showing the subjective component.  In

9   fact, plaintiff has submitted a document showing that defendant Hicks confiscated the

10  medication because it lacked proper labeling rather to expose him to a risk of harm.  ECF No.

11  247 at 173.  Plaintiff does not allege or proffer evidence that he requested return of the

12  medication but was ignored by defendant Hicks or otherwise show that defendant Hicks acted

13  unreasonably or delayed replacement of plaintiff's medications.  Accordingly, summary

14  judgment is appropriate in favor of defendant Hicks on plaintiff's claim that she violated his

15  rights under the Eighth Amendment by confiscating his acid reflux and eye medication.

16  **III.  Summary**

17        If the district judge adopts these findings and recommendations, plaintiff's remaining

18  claims will be:

19        (1) That defendant Von Rader violated the Eighth Amendment by escorting plaintiff

20  partially clothed through frigid conditions from his cell to the watch outpost on December 31,

21  2002;

22        (2) That defendant Houghland violated the Eighth Amendment by applying too-tight

23  handcuffs to plaintiff on December 31, 2002, and defendant Chapman violated the Eighth

24  Amendment by witnessing that conduct and failing to intervene;

25  /////

26  /////

(3) That defendants Bigford and Martinez are liable for nominal and punitive damages because they denied plaintiff adequate sanitation, bedding, clothes, hygiene items, and hygienic showers from December 31, 2002 through January 4, 2003; and

(4) That defendants Little and Doyle are liable for nominal and punitive damages because they denied plaintiff adequate bedding, clothing, warmth, and sanitation from January 4, 2003 through January 9, 2003.

**IV.    Recommendations**

In accordance with the foregoing analysis, it is hereby RECOMMENDED that:

1. Plaintiff's claims against defendants Pribble, Wilbur, Kelsey, Briddle, St. Andre, Weaver, Gower, Bates, Brown, and Arnold be dismissed without prejudice for failure to exhaust administrative remedies.

2. Plaintiff's claim alleging that defendant Von Rader subjected him to excessive force on December 31, 2002 be dismissed without prejudice for failure to exhaust administrative remedies.

3. Plaintiff's claim alleging that defendant Houghland punched, grabbed, and slammed plaintiff against a wall on December 31, 2002 be dismissed without prejudice for failure to exhaust administrative remedies.

4. Plaintiff's claim alleging that defendant Chapman "was a bystander in tacit authorization and refused to intervene" as other defendants punched, grabbed, and slammed plaintiff into a wall on December 31, 2002 be dismissed without prejudice for failure to exhaust administrative remedies.

5. Summary adjudication of plaintiff's claims that defendants Bigford, Martinez, Little, and Doyle deprived plaintiff of warm food, yard exercise, phone calls, paper, pen, request slips, complaint forms, and medical care between December 31, 2002 and January 9, 2003 be granted in favor of defendants.

/////

6. Summary adjudication of plaintiff's claims for compensatory damages against defendants Bigford, Martinez, Little, and Doyle be granted in favor of defendants.

7. Summary adjudication of plaintiff's claims against defendant Hicks be granted in her favor.

8. Defendants' requests for summary adjudication and/or dismissal of plaintiff's remaining claims be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: July 29, 2013.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE